## READ *v.* PLATTSMOUTH.

1. Negotiable coupon-bonds were, without authority of law, issued in October, 1872, by a city in Nebraska, for the purpose of raising money wherewith to construct a high-school building within her limits. They were sold, and the proceeds applied accordingly. The legislature, by an act approved Feb. 18, 1873, *infra*, p. 571, legalized the proceedings of the city in the premises. The Constitution of the State then in force declares that "the legislature shall pass no special act conferring corporate powers," and that "no bill shall contain more than one subject, which shall be clearly expressed in its title." A purchaser of the bonds for full value, without notice of any informality in their issue, to whom the city paid the interest thereon for four years, brought suit to recover the amount of the coupons then due and unpaid. *Held*, 1. That as by force of the transaction the city was bound to refund the moneys he paid it in consideration of its void bonds, and as the act, by confirming them, merely recognizes the existence of that obligation, and provides a medium for enforcing it according to the original intention of the parties, no new corporate powers were thereby conferred. 2. That the title of the act is a full and apt description of its contents.

2. Under the second section of the act of Nebraska approved Feb. 25, 1875, *infra*, p. 573, the bonds are valid obligations, and neither it nor the said act of Feb. 18, 1873, is in conflict with the Constitution of the State which was then in force.

ERROR to the Circuit Court of the United States for the District of Nebraska.

Read sought to recover, in an action at law, the amount of certain overdue interest-coupons upon bonds issued by the city of Plattsmouth, dated Oct. 1, 1872. Each bond contains a recital that it "is one of a series of twenty-five of like tenor, date, and amount, issued in pursuance of the orders of the city council of the city of Plattsmouth, in the State of Nebraska, for the construction of a high-school building in said city, authorized by a vote of the legal voters of said city of Plattsmouth, and in compliance with the laws of the State of Nebraska, and for the payment of which the good faith, property, and effects of said city are hereby pledged."

These bonds were issued for the purpose of constructing a high-school building in the city. The city sold them, and applied their proceeds to construct such a building, which is now in actual use by the city; and the city paid interest on the bonds for four years.

On the trial the plaintiff proved that he bought the entire

issue of the bonds for full value, without notice of any infor-
mality in their issue.   There was no evidence offered in de-
fence, and the court instructed the jury to find a verdict for
the defendant.   The plaintiff excepted, and for the alleged
error in this ruling the judgment rendered upon the verdict in
favor of the city is now sought to be reversed.

The judgment rests upon the assumption that the bonds in
question are void, and this depends on these two propositions :
*First*, that at the time they were issued there was no law which
authorized them ; and, *second*, that certain acts of the legisla-
ture of Nebraska, subsequently passed, purporting to validate
them, are themselves void.

The legislation bearing upon the question appears to be as
follows : —

The city of Plattsmouth was created, March 14, 1855, a
body corporate under that name, by a special act of the legis-
lature of the Territory of Nebraska, with all the powers and
attributes of a municipal corporation.   The forty-first section
is as follows : —

" The council is authorized to borrow money for any object in
their discretion, if at a regularly notified meeting, under a notice
stating distinctly the nature and object of the loan, and the amount
thereof as nearly as practicable, the voters of the city may deter-
mine in favor of the loan by a majority of two-thirds of the legal
voters at the said election, and the said loan can in no case be
diverted from the specified object."

The legislature, in 1867, also passed " An Act to authorize
the common council of the city of Plattsmouth to raise money to
erect a central or high-school building, and for other purposes."

So much of the act as is material here is contained in the
following : —

" SECT. 1. *Be it enacted by the council and house of representa-
tives of the Territory of Nebraska*, That the mayor and common
council of the city of Plattsmouth shall, by virtue of their office, be
commissioners of the school-house fund in and for said city, and the
common council shall perform all the duties of such commissioners,
and shall possess all the rights, powers, and authority, and be sub-
ject to the same restraints of township boards of education, for the
purpose of raising money required for erecting, purchasing, and

leasing· school-houses and procuring sites therefor, and the fitting up and furnishing thereof.

" SECT. 4. All common, graded, and central schools organized within the city of Plattsmouth shall be public and free to all children residing within the city.   And the common council, by a vote of the majority of all the council elected, are hereby authorized to include in the general annual city tax-list such additional sum as in their opinion, with the public school moneys for the year, will be sufficient to support the school system of said city.

" SECT. 5. The common council shall have power and it shall be the duty, —

" *First,* To designate and purchase or lease in said city all necessary sites for school-houses therein, and to improve and fence the same, as to them shall appear suitable and proper.

" *Third,* To make such by-laws and regulations as they may deem necessary for the proper security and preservation of the school-houses and other property owned by the city for school purposes.

" SECT. 7. The mayor and common council are hereby authorized and directed to raise by loan, in anticipation of the taxes, when deemed necessary, moneys not exceeding in the aggregate $15,000, required for erecting, purchasing, or leasing school-houses and procuring sites therefor.

" SECT. 8. That for the purpose of effecting such loan, the mayor and common council are authorized to issue the bonds of said city, under the seal of the said city, to the amount of $15,000, and no more, and bearing interest at a rate not exceeding ten per centum per annum, redeemable in one, two, three, four, five, and six years.

" SECT. 17. The title of all school-houses, sites, lots, furniture, and all other school property, shall be vested in the city of Plattsmouth.

" SECT. 20. The general school laws of this Territory in force at the time of the passage of this act shall, so far as the same are applicable, be taken and construed as part of this act." Territorial Laws of 1867, p. 38.

The Constitution of Nebraska, which took effect March 1, 1867, soon after the passage of the foregoing act, provided, in art. 1, sect. 16, that " it shall be the duty of the legislature to pass suitable laws to encourage schools and the means of instruction."   Sect. 1, art. 8, declared that " the legislature shall pass no special act conferring corporate powers ; " and sect. 4

of. the same article, that " the legislature shall provide for the organization of cities and incorporated villages by general laws," &c.

Immediately after the admission of the State into the Union the legislature made a revision of its general school laws, and provided, in sect. 60 of the act, that " nothing in this act shall be construed so as to interfere with or abrogate any of the rights, privileges, and immunities, duties or liabilities, conferred or prescribed by special enactment for any school district comprised within any incorporated city." Laws of the State of Nebraska, 1867, pp. 102, 110.

And accordingly the provisions of the special school law of 1867 were continued in force, and were in substance re-enacted in the act of Feb. 18, 1873, " to regulate the public schools of. Plattsmouth City and provide means for their support."

The same authority to borrow money and to issue bonds therefor, for school and school-house purposes, and subject to the same limitations, is conferred by this act as that contained in the original statute restricting the amount to $15,000.

The original charter of the city of Plattsmouth was superseded under the Constitution by a general law organizing municipal corporations, under which Plattsmouth became a city of the second class. Laws of Nebraska of 1871, p. 26. This act, passed March 1, 1871, authorized the city " to borrow money on the credit of the city, and pledge the credit, revenue, and public property of the city for the payment thereof," without any limit as to amount, where the city council was instructed to do so by a majority of all the votes cast at an election held in such city for that purpose. Gen. Stats. Nebraska, 1873, p. 148.

After the issue of the bonds in suit, the legislature of Nebraska passed the following act, which was approved Feb. 18, 1873 : —

" AN ACT to legalize the proceedings of the city council of the city of Plattsmouth, in reference to the construction of a high-school building, and to authorize the city council to complete the same.

" WHEREAS, At a session of the city council of the city of Plattsmouth, county of Cass, and State of Nebraska, held on the first day

of July, A. D. 1872, the proposition of issuing the bonds of said city to the amount of $25,000, for the purpose of erecting a high-school building, was submitted to the voters of said city; and

"Whereas, At a special election held in said city, for the purpose of voting on said proposition, on the twenty-second day of July, 1872, a majority of the votes cast were in favor of issuing said bonds; and

"Whereas, In pursuance of said submission and vote, the city council of said city of Plattsmouth have issued and sold said bonds, and with the proceeds thereof have proceeded to let the contract for the construction and completion of said house, and have appointed C. F. Driscoll and M. L. White superintendents of the construction of the same, and the work on said building has commenced; therefore,

"*Be it enacted by the legislature of the State of Nebraska:*

"SECT. 1. That all acts and proceedings of the city council of said city of Plattsmouth, in relation to issuing said bonds and letting the contract for the construction of said high-school building, and the appointment of said C. F. Driscoll and M. L. White to superintend the construction of the same, and all matters and proceedings connected therewith which may in any way affect the validity of said bonds, or of the contract for the construction of the said school-house, be and the same are hereby legalized, confirmed, and made valid in law.

"SECT. 2. *And be it further enacted,* That the city council of the said city of Plattsmouth are hereby authorized and empowered to proceed with the construction of said high-school building until its completion; and for that purpose shall have full and exclusive control of all funds realized from the sale of bonds issued by the said city of Plattsmouth for that purpose.

"SECT. 3. All funds now in the hands of the said city treasurer of the said city of Plattsmouth which have been created by the sale of the high-school bonds of the said city shall be applied to the erection of said high-school building, and shall not be appropriated or diverted to other use or purpose whatever.

"SECT. 4. *And be it further enacted,* That the right and title of the said city of Plattsmouth in and to block number twenty-four in said city, which has heretofore been platted and designated on the recorded plat of said city as a park, and dedicated to public use, and on which the said school-house is being erected, shall vest and remain in the said city of Plattsmouth for school purposes, and the same shall be held exclusively for said purpose.

" SECT. 5. This act shall take effect and be in' force from and after its passage." Session Laws, 1873, p. 72.

The legislature passed another statute, approved Feb. 25, 1875, entitled " An Act to amend an act to incorporate cities of the second class and to define their powers, approved March 1, 1871, and to legalize certain taxes therein mentioned."

The text of the act is as follows: —

" *Be it enacted by the legislature of the State of Nebraska :*

" SECT. 1. That no tax heretofore levied in any city of the second class shall be held to be invalid, illegal, or irregular because the same was not levied within the time prescribed by the law in force when the same was so levied; nor on account of any mere irregularity in the time or manner of assessment of property, or other irregularity or omission not affecting the equality or substantial justice of such tax, and such taxes shall be inserted in the tax list and shall be collected in the same manner as other general taxes are.

" SECT. 2. That all bonds heretofore issued by any city of the second class in good faith for the erection of, or to procure the means for erecting, a high-school building within such city, or for heating or furnishing the same, whether issued under a general or special law providing therefor, or any bonds hereafter issued by such city in exchange for any such bonds, shall be legal and valid; and any tax heretofore or hereafter levied to pay the interest or a portion of the principal of any such bonds, not exceeding five mills on the dollar valuation of the taxable property in the city in any one year, shall be legal and valid.

" SECT. 3. That in all cases in which cities of the second class have collected and expended, for the use and benefit of such cities, either in works of internal improvement or otherwise, moneys collected from licenses for the sale of intoxicating liquors, such expenditures are hereby declared to be legal, and the same is hereby ratified and confirmed, and such cities of the second class are hereby exonerated from any and all liability therefor.

" SECT. 4. This act shall take effect and be in force from and after its passage." Laws of Nebraska, 1875, p. 205.

*Mr. John F. Dillon* and *Mr. Wager Swayne* for the plaintiff in error.

*Mr. John L. Webster* for the defendant in error.

MR. JUSTICE MATTHEWS delivered the opinion of the court, and, after making the foregoing statement, proceeded as follows : —

We cannot accept the conclusion, urged upon us by the counsel for the plaintiff in error, that the city of Plattsmouth had authority to issue the bonds in question, under the power conferred upon it as a municipal body, " to borrow money for any purpose within its` discretion," without reference to the limit, as to the amount, imposed by the act of 1867, expressly authorizing it to build school-houses. Whatever implications of power as to school buildings might have been admissible, if the law conferring municipal powers had stood alone, must give place to the express declarations, with the accompanying qualifications, contained in the statute that dealt by name with the very subject. And we must, therefore, assume, at the beginning, that while the city of Plattsmouth was authorized to erect a high-school building, it could not lawfully borrow money or issue its bonds for that purpose in excess of $15,000.

We are, therefore, required to consider whether the issue of bonds involved in this litigation can be supported by the subsequent legislation which sought to cure the defects of their origin.

No objection is made to either of the statutes relied on, on the ground that the Constitution of Nebraska of 1867 forbade retroactive legislation. The twelfth section of article 1 of that instrument declares that " no bill of attainder, *ex post facto* law, or any law impairing the obligation of contracts, shall ever be passed." This prohibition would not include legislation of the class now in question.

They are attacked, however, on other grounds.

The first act, — that of Feb. 18, 1873, — it is claimed, is made void by article 8 of section 1 of the Constitution of Nebraska, which declares that " the legislature shall pass no special act conferring corporate powers." It is contended that the act in question, by legalizing bonds of the city, void because it had no power to issue them, is legally equivalent to an act conferring upon the city power to issue bonds, which is conferring corporate power, and, being a special act, is therefore unconstitutional.

But this conclusion we cannot adopt.

The act in question, so far as it relates to the bonds in suit, does not confer any corporate power upon the city in the sense of the Constitution of the State. The statute operates upon the transaction itself, which had already previously been consummated, and seeks to give it a character and effect different in its legal aspect from that which it had when it was *in fieri*. Whether such an effect may be given by a legitimate exercise of legislative power, depends upon those considerations which draw the line beyond which retroactive laws cannot pass, and is not affected by the supposed form of the enactment as a special or general act conferring corporate power. For it operates upon the rights of the parties, as determined by the equity of their circumstances and relations, and gives to them the sanction derived from subsequent confirmation, by clothing them with forms which are essential to their enforcement, but not to their existence. Within the usual limitations prescribed by our written constitutions, such as have been quoted from that of Nebraska, this may be done, provided it can be done without the destruction of rights recognized by the law as vested.

In the present case the statute in question does not impose upon the city of Plattsmouth, by an arbitrary act, a burden without consent and consideration. On the contrary, upon the supposition that the bonds issued, as to the excess over $15,000, were void, because unauthorized, the city of Plattsmouth received the money of the plaintiff in error, and applied it to the purpose intended, of building a school-house on property the title to which is confirmed to it by the very statute now claimed to be unconstitutional, and an obligation to restore the value thus received, kept, and used, immediately arose. This obligation, according to general principles of law accepted in Nebraska, was capable of judicial enforcement. *Clark* v. *Saline County*, 9 Neb. 516; *Louisiana* v. *Wood*, 102 U. S. 294; *New Orleans* v. *Clark*, 95 id. 644; *Hitchcock* v. *Galveston*, 96 id. 341; *Parkersburgh* v. *Brown*, 106 id. 487; *Chapman* v. *County of Douglass*, ante, p. 348.

As was said by Mr. Justice Field, in *New Orleans* v. *Clark*: "A law requiring a municipal corporation to pay a demand

which is without legal obligation, but which is equitable and just in itself, being founded upon a valuable consideration received by the corporation, is not a retroactive law, — no more so than an appropriation act providing for the payment of a pre-existing claim.    The constitutional inhibition does not apply to legislation recognizing or affirming the binding obligation of the State, or of any of its subordinate agencies, with respect to past transactions.".   p. 654.

As the city of Plattsmouth was bound, by force of the transaction, to repay to the purchaser of its void bonds the consideration received and used by it, or a legal equivalent, the statute which recognized the existence of that obligation, and, by confirming the bonds themselves, provided a medium for enforcing it according to the original intention and promise, cannot be said to be a special act conferring upon the city any new corporate power.    No addition is made to its enumerated or implied corporate faculties; no new obligation is, in fact, created.    The language of the Constitution, forbidding special legislation of that description, evidently refers to grants of authority to be exercised by the body itself and in the future, and a consideration of the evil intended to be remedied by the prohibition will confine it to grants of that character, and will not include a statute like that now under discussion.    Here the power of the legislative department of the State is directly exercised upon the transaction itself, and upon a matter clearly within the scope of its authority.    It was the constitutional duty of the legislature " to pass suitable laws to encourage schools and the means of instruction."    Under the terms of this authority, having created, as it did, the city of Plattsmouth a separate school district, it might prescribe the number and character of the school-houses to be provided, and impose, if it saw fit, directly, a tax upon the locality to defray the cost of erecting and maintaining them.    What the State might properly have done by direct action it may do through the public agency of a municipal body, such as the city of Plattsmouth, which, in the performance of the duty assigned, does not so much exercise a corporate power of its own as discharge a function of the State.    An illustration and example of the distinction is found in the case of *Foster* v. *Commissioners of Wood*

*County*, 9 Ohio St. 540, where it was held that a public corporation for the construction and repair of highways was really only a part of the machinery of the State, and its officers, county or township officers discharging duties in connection therewith, and that consequently an act of the General Assembly authorizing the body by name to complete the construction of a particular highway, and to make an assessment of the cost upon the property benefited, was not a special act conferring corporate power, within the meaning of the constitutional prohibition. So it was held in *The State* v. *Squire*, 26 Iowa, 340, that while the legislature would not, in view of the constitutional provision of that State, have the power to pass a special law incorporating an independent school district, it would nevertheless have the power to pass a curative act, legalizing the defective organization of a school district already in existence under the general law authorizing the creation of independent school districts.

In view of the decisions of this court and the courts of the several States in this country, affirming the capacity of municipal corporations to accept and administer trusts of property given or devised for purposes of public charity, it would not be denied that the city of Plattsmouth might lawfully receive and apply a gift of money bestowed in trust to pay the principal and interest of the bonds involved in this litigation, as having been issued for the purpose of obtaining means with which to erect a public-school building. The administration of such a trust would not be contested on the ground that it was an enlargement of its corporate powers. But the duty to repay the consideration for them, employed by it in the same uses, already existed; and its enforcement through the legislative act, which prescribed a remedy, is not more open to the same objection. It is not a special act conferring corporate power; it is merely a special act taking away from the corporation the power to interpose an unconscionable defence against a just claim, and to avoid an obligation to pay an equivalent for public benefits, which it has continued to enjoy.

The very proposition involved here was maintained by the Supreme Court of Nebraska in the case of *Commissioners of Jefferson County* v. *The People*, 5 Neb. 127. There it was

decided that a special act of the legislature, authorizing the county commissioners of Jefferson County to provide funds for the payment of certain outstanding warrants of said county, by issuing bonds, selling the same and using the proceeds in payment of warrants issued to contractors for the erection of a court-house and jail, was valid and effectual. The court said : " That Jefferson County is justly indebted to the relator for the amount of the warrants in question will not be controverted ; and where such is the case, there is no doubt of the power of the legislature to require the county to issue its bonds for the amount of its indebtedness." In one aspect, this case goes beyond the argument ; for it contemplated further action by the corporation in the issue of its bonds.

The second statute — that of Feb. 25, 1875 — is not subject to the objection to the former one just disposed of, for it is a general act " to amend an act to incorporate cities of the second class and to define their powers, approved March 1, 1871, and to legalize certain taxes therein mentioned," and the terms of its second section embrace the case of the bonds in controversy in this suit. It expressly declares " that all bonds heretofore issued by any city of the second class in good faith for the erection of, or to procure the means for erecting, a high-school building within such city, or for heating or furnishing the same, whether issued under a general or special law providing therefor, or any bonds hereafter issued by such city in exchange for any such bonds, shall be legal and valid ; and any tax heretofore or hereafter levied to pay the interest or a portion of the principal of any such bonds, not exceeding five mills on the dollar valuation of the taxable property in the city in any one year, shall be legal and valid."

Accordingly objections are made to its validity for want of conformity to other provisions of the Constitution of the State, the first of which, — that it conflicts with sect. 19, art. 2, which declares that " no bill shall contain more than one subject, which shall be clearly expressed in its title," — it is claimed, applies to both acts.

In regard to the special act of Feb. 18, 1873, however, it seems to us unnecessary to say more than that the title appears to be a full and apt description of the whole contents of the

act. The proceedings of the city council in reference to the construction of a high-school building, which it is the object of the act, as expressed in the title, to legalize, necessarily includes the issue of the bonds authorized by it for that purpose.

In *White* v. *The City of Lincoln*, 5 Neb. 505, 516, it was said that " the object of this constitutional provision is to prevent surreptitious legislation by incorporating into bills obnoxious provisions which have no connection with the general object of the bill, and of which the title gives no indication. It will be sufficient, however, if the law have but one general object, which is fairly expressed in the title of the bill."

Accordingly it was held in that case, as it was also in *City of Tecumseh* v. *Phillips*, id. 305, that the third section of the act of Feb. 25, 1875, which ratified expenditures by cities of the second class of moneys illegally collected for licenses for the sale of intoxicating liquors, was void, because there was nothing in the title of the act to indicate the object contemplated by that section. " It is in nowise amendatory," said the court, in *City of Tecumseh* v. *Phillips*, *supra*, " of the general incorporation law for cities of the second class, nor does it make any allusion to the legalization of any taxes whatever." And in the same case, speaking of the entire act, the court said: " But we fail to discover wherein it is in any particular amendatory of the general act relating to cities of the second class."

The act, therefore, may be considered as if its title were simply that of " an act to legalize certain taxes therein mentioned."

The second section, which is the only one material in this controversy, does legalize taxes theretofore or thereafter levied to pay the interest on certain bonds; namely, such as having been theretofore issued by any city of the second class, in good faith for the erection of, or to procure the means for erecting, a high-school building within such city, or for heating or furnishing the same, whether issued under a general or special law providing therefor, &c., are thereby declared to be legal and valid.

It is impossible to say that legalizing the bonds, and the taxes levied to pay them, are two diverse subjects, when to

legalize the taxes necessarily makes the bonds valid; for nothing more strongly confirms an invalid bond than to make provision for its payment. We have no hesitation, therefore, in upholding the second section of the act of Feb. 25, 1875, as a valid enactment, so far as the present objection is concerned.

As we do not consider it as an act to amend the general law incorporating cities of the second class, rejecting that portion of the title, it is not subject to the further objection, that it does not conform to the constitutional requirement that "no law shall be revived or amended, unless the new act contain the entire act revived and the sections amended."

The remaining objection is not to its validity, but to its application to the present case. It is argued that the second section of the act relates only to bonds that have been issued "under a general or special law providing therefor;" and that the bonds now in controversy were not so issued, and cannot, therefore, claim support from this provision.

If by this is meant, that no bonds are within the purview of this section, except such as have been lawfully issued, the conclusion results in an absurdity; for it supposes an act of the legislature passed to cure the invalidity of valid bonds.

If, on the other hand, the section is construed to mean that all bonds that have been issued in good faith, for the purposes mentioned, and under color of law, whether general or special, but without actual authority, shall be deemed to be legal and valid, the only rational and worthy effect is given to the enactment that can be deduced from its terms. We do not doubt that such was the purpose of the legislature, and that it is the meaning of the law.

In our opinion, the bonds in controversy are valid obligations of the city of Plattsmouth, under either of the two acts, of Feb. 18, 1873, and of Feb. 25, 1875, respectively; and the Circuit Court erred in its instructions to the jury to the contrary. For that error, the judgment is reversed and the cause remanded with instructions to grant a

*New trial.*