School City of Rushville *v.* Hayes.

## School City of Rushville et al. *v.* Hayes et al.

[No. 20,211.    Filed February 18, 1904.]

Constitutional Law.—*Authority to Contest Statute.—Special Legislation.— Issue of Bonds by School City.*—A school city issued bonds and placed them on the market to the highest bidder, requiring with each bid a deposit of a certified check equal to five per cent. of the amount of the bonds. *Held*, that the successful bidder had such an interest in the subject of the statute under which the bonds were to be issued as to authorize him to contest its validity. *pp. 194–197.*

Same.—*Special and Local Legislation Authorizing School City to Issue Bonds.*— The act of March 9, 1903 (Acts 1903, p. 347), providing that the board of school trustees of any school corporation having a population of not more than 4,545, nor less than 4,540, according to the last preceding United States census, may issue bonds for certain school purposes, is unconstitutional, because special and local legislation. *pp. 198–204.*

From Rush Circuit Court; *Douglass Morris*, Judge.

Action by William J. Hayes and others against the School City of Rushville and others. From a judgment for plaintiffs, defendants appeal. *Affirmed.*

*B. L. Smith, Claude Cambern, D. L. Smith* and *Gates Sexton,* for appellants.

*W. H. H. Miller, J. B. Elam, J. W. Fesler* and *S. D. Miller,* for appellees.

Dowling, J.—For the purpose of supporting its common schools by the purchase of grounds and the erection of buildings thereon, the school city of Rushville, with the

approval of the common council of the civil city, determined to issue its bonds to the amount of $35,000, and to sell them to the highest bidder. Due notice of the intended sale was given by publication. The advertisement required that all bids should be accompanied by a certified check for five per cent. of their amount. The appellees sent in a sealed proposal for the whole of the bonds, together with their certified check for $1,750, being the amount required as a deposit. Their bid was the highest, and the board of school trustees awarded the bonds to them at the price offered. Afterward the appellees were advised that the act of the legislature, under which the bonds were issued, was void, that it had been repealed before the commencement of the proceedings for the issue of the bonds, and that the bonds were invalid. They refused to complete the purchase, and demanded the return of the $1,750 deposited by them with their bid. The school city declined to surrender the $1,750, and insisted that the sale was valid, and the bonds legal. It offered to credit the amount of the deposit on the bid, and to deliver the bonds on payment of the balance of the bid, but, in the event of the failure of the appellees to complete the purchase of the bonds, it declared its intention to retain the $1,750 as a forfeiture, and to sell the bonds to other persons. Thereupon, this suit was brought by the appellees to recover the amount of their deposit, or, in case the bonds should be held valid, to restrain the appellants from disposing of them to any other bidder, and to compel their delivery to the appellees. The complaint stated the foregoing facts, among others, and a demurrer to it having been overruled, the school city and its board of trustees refused to plead further, and judgment was rendered in favor of the appellees.

The decision on the demurrer is the error assigned.

Section one of the act of March 9, 1903 (Acts 1903, p. 347), under which the school city proceeded in issuing its bonds, is as follows: "Be it enacted by the General As-

sembly of the State of Indiana, that the board of school trustees of any school corporation in any city or town in this State having a population of not more than 4,545 nor less than 4,540, according to the last preceding United States census, which shall have purchased any ground or building * * * or may desire to purchase any ground, building, or buildings, * * * may, on the filing of a report under oath with the board of trustees of the incorporated town or with the common council of the city in which such school corporation is located, showing the actual or estimated amount required to purchase such ground, erect building, or buildings, or the amount of such debt, on the passage of a resolution approving the same by the board of trustees of such town or common council of such city, may issue the bonds of such school town to an amount not exceeding in the aggregate $35,000, in denominations not less than $100 nor more than $1,000, said bonds to bear not to exceed five per cent. interest, and payable at any place that may be designated in said bonds, the principal in not less than one year nor more than fifteen years from the date of such bonds, and the interest annually or semiannually, as may be therein provided, to provide means to erect such building or to pay such debt. Such board of school trustees may from time to time negotiate and sell as many of such bonds as may be necessary for such purposes, in any place and for the best price that can be obtained therefor in cash: Provided, that such bonds shall not be sold for less than their par value." Section two requires the school trustees to file with the county auditor a bond payable to the State of Indiana in a sum not less than the face value of the bonds, with security to be approved by the auditor, conditioned for the faithful and honest application of the proceeds of the sale of the bonds. Section three authorizes the levy of a special tax additional to that now provided, for the payment of the interest and principal of such bonds. Section four directs the ap-

plication of any surplus special school revenue to the payment of the interest and principal of any debt incurred under the act. Section five repeals all laws in conflict with the act. Section six declares an emergency requiring the immediate taking effect of the law.

The main objection taken to this statute by the appellees is that it is local and special, and therefore void under the provisions of article 4, §22, of the state Constitution. The appellants answer that the act is general, and that the classification of cities named in it is a proper one. They also deny that the appellees have such an interest in the subject of the statute as authorizes them to contest its validity.

The latter position is clearly untenable. The appellees are directly interested in the question of the constitutionality of the act. The appellants assert a right under the statute to compel the appellees to pay to them the amount of their bid for the bonds, or, upon failure of the appellees to do so, to retain as a forfeiture the deposit of $1,750 which accompanied appellees' bid. If the statute is valid, these claims may be well founded and enforceable. If it is void, because in conflict with the Constitution, the appellees can not be required to take and pay for the bonds, nor can the appellants lawfully retain the sum deposited by the appellees. The agreement between the parties contemplated the delivery to the appellees of valid obligations of the appellant school city to the amount of $35,000. Unless such obligations can be delivered, the appellees, as such purchasers, can not be required to accept and pay for them.

It is not true, as asserted by appellants, that the school city and all its property owners and taxpayers are estopped to deny the validity of the bonds, and therefore that the rights of the appellees could not be prejudiced by the fact that the statute under which they were issued was void. The contrary has often been decided in this State and in

other jurisdictions. *Town of Winamac* v. *Huddleston*, 132 Ind. 217; *Alexander* v. *Johnson*, 144 Ind. 82; *Louisiana* v. *Wood*, 102 U. S. 294, 26 L. Ed. 153; High, Injunctions, §§783, 784; *Read* v. *Plattsmouth*, 107 U. S. 568, 2 Sup. Ct. 208, 27 L. Ed. 414. If appellants' view of the law were correct, the restrictions of the Constitution in many cases would be vain and ineffectual. Any city or town could incur debts and issue notes or bonds in violation of the express prohibitions of that instrument, all of which would be enforceable, and against whose validity and payment neither the corporation itself nor its property owners and taxpayers could be heard to object.

The payment of the bonds, if issued without authority, could be enjoined at the suit of any taxpayer, or, if sued upon, the corporation could resist their collection on the ground that they were illegally issued. This being the case, the bonds would have no legal value in the hands of a purchaser, and an agreement to buy and to pay for them would be without consideration. Unless the appellees are permitted to reject the bonds if they were issued without authority of law, they will be compelled to pay more than $35,000 for securties for which the school city is not liable, and the collection of which can not be enforced by legal process. It is very evident that the appellees have an interest in the question of the validity of the bonds which entitles them to challenge the constitutionality of the statute under which they were issued.

The deposit of the check for $1,750 by the appellees at the time they made their bid did not constitute such a voluntary payment as deprived them of the right to demand its return, and to recover it upon discovery of the fact that the proposed issue of the bonds would be void. *Gist* v. *Smith*, 78 Ky. 367; *Gwin* v. *Smurr*, 101 Mo. 550, 14 S. W. 731; *Louisiana* v. *Wood, supra; Read* v. *Plattsmouth, supra.*

As the offer to purchase the bonds made by the appellees was conditional, they had the right to refuse to take the bonds on that ground also.

The act of March 9, 1903, *supra,* purports to be a general law. It attempts to make a classification of cities and towns, and its operation is confined to the class so created. That class embraces cities and towns having a population of not more than 4,545 nor less than 4,540 according to the last preceding census. At the time of the enactment of the statute only one city in the State came within the prescribed description. The point to be determined on this appeal is whether this act is, in fact, general, or whether it is local and special, within the meaning of the Constitution.

The views of counsel for appellants are thus stated in their brief: "The act itself is general in form, as it provides 'that the board of school trustees for any school corporation in any city or town in this State.' No city or town is excluded. The only limitation is that such city or town should have a certain population under the last preceding United States census. This creates a class of cities. It is true that under the United States census of 1900 the city of Rushville is the only city that meets the requirements of the statute, and can avail itself of the provisions of the act. But will this court say that under any future census there may not be ten or twenty cities that will have all the qualifications required by this act? The organic law of the State, the aid of which is invoked by the appellees to have this law destroyed, divides our government into general heads, to wit, the administrative, judicial, and legislative, and defines their general powers. The legislative is the only power in the State that can enact laws. The wisdom or frailty of their declared laws can only be measured or tested by limits imposed and prescribed by the Constitution. The intention of the legislators at the session of 1903 to create general classes for the support of common

schools upon the basis of population is fully and conclusively shown by the several laws enacted at that session. They are as follows: (1) An act relating to cities having a population of more than 100,000 to issue bonds, approved January 29, 1903 (Acts 1903, p. 5). (2) An act authorizing school corporations of cities with a population not less than 2,820 nor more than 2,830 to create a debt to erect school buildings, approved February 4, 1903 (Acts 1903, p. 13). (3) An act authorizing school corporations of cities with a population of not more than 7,820 nor less than 7,800 to issue bonds for erection of school buildings, approved March 5, 1903 (Acts 1903, p. 175). (4) An act authorizing school trustees of cities with a population of not less than 7,095 nor more than 7,105 to issue bonds to erect school buildings, approved March 9, 1903 (Acts 1903, p. 239). (5) An act authorizing boards of school trustees in school cities with a population not less than 6,100 nor more than 6,130 to issue and sell bonds to construct schoolhouses, approved March 9, 1903 (Acts 1903, p. 335). (6) The act under which bonds are issued in case at bar, approved March 9, 1903 (Acts 1903, p. 347). (7) A general act applying to all cities in relation to creating school debts, approved March 9, 1903 (Acts 1903, p. 350). (8) An act authorizing boards to levy a tax to build schoolhouses in cities with a population of not less than 7,200 nor more than 7,700, approved March 10, 1903 (Acts 1903, p. 415). (9) An act authorizing boards of school trustees of cities or towns with a population not less than 3,410 nor more than 3,420 to issue bonds for school building purposes, approved March 11, 1903 (Acts 1903, p. 533). (10) An act authorizing boards of school trustees of cities or towns with a population not less than 4,025 nor more than 4,050 to issue and sell bonds for school building purposes, approved March 12, 1903 (Acts 1903, p. 538). The legislature thus created nine different classes authorizing boards of trustees in school cities or towns to provide means to erect school

buildings. The purpose and intent of the legislature can not be doubted."

Under the Constitution of this State, cities and towns may be classified upon the basis of differences in population, and laws applicable to a single class may be regarded as general in their character, and not local or special. But the classification must be natural and reasonable, and not arbitrary. It must be founded upon real and substantial differences in the local situation and necessities of the class of cities and towns to which it applies. Where such a classification excludes from its operation cities and towns differing in no material particular from those included in a class, the statute can not be upheld. It is obvious that cities having a population of 100,000 or more may require larger and more varied powers than such as contain a population of 10,000 or less. The political needs of the larger community may be of a different nature, and the forms and methods by which its affairs must be administered may be more extensive, complicated, and elaborate than those required in a municipality of smaller population.

But can it be said that cities and towns having substantially the same population should be placed in different classes, and each class governed by a different set of laws? What reason requires that such distinctions should be made? Why should cities having a population not exceeding 4,545 nor less than 4,540 be placed in a separate class from cities having a population of not more than 5,000 nor less than 4,000? It is not possible that the political necessities of one of these classes founded on population alone could be different from those of the other. Why should the school corporation of a city of not more than 4,545 inhabitants nor less than 4,540 be authorized to issue bonds for the support of its public schools without submitting the question of the expediency of incurring the debt to the electors of the city, while the school corporation of every other city in the State incorporated under the general law

is required to decide such question by a popular vote? In what respect does the one corporation differ from all others? The mode of classification furnishes a conclusive answer to the question. It consists solely in a trifling difference in population. The requirements of the statute serve no other purpose than to identify the particular city to which the statute shall apply. The fact that the act is declared to apply to all cities and towns having a population of not more than 4,545 nor less than 4,540, as shown by the last preceding census, does not relieve it from the vice of being a local and special law. The possibility that other cities and towns may hereafter meet the narrow conditions of the statute is not sufficient to take it out of the prohibition of the Constitution. Its legal foundation is not more secure than if it had been declared to apply to all cities and towns bearing the name of Rushville, as shown by the last preceding census. The classification is entirely arbitrary and artificial, and the plain command of the Constitution can not be evaded by so weak and transparent a device.

Let it be supposed that the act of March 9, 1903, supra, is valid, what provision of the Constitution can not be rendered nugatory by similar evasions? If cities and towns may be classified according to trifling differences in population, so may counties and townships. By means of statutes, general in form, but local and special in purpose, resting entirely upon slight differences in population, every provision of article 4, §22, of the Constitution may be successfully evaded.

Inferior in dignity and force of obligation only to the Constitution of the United States and the acts of congress and treaties made under it, the state Constitution is the supreme law of the commonwealth. It is to be interpreted and applied in a reasonable manner; it is to be observed and obeyed, and not evaded and defeated by distinctions and classifications which rest upon no rational or natural basis, and which deceive no one. When it declares

that the General Assembly shall not pass local or special laws providing for supporting common schools and for the preservation of school funds, its mandate can not be defeated by creating a class of cities differing in no material respect from scores of others in the State. The mere convenience of local communities, the financial necessities of particular cities, the conflicting views of citizens on the subject of the necessity for the erection of school buildings, are not sufficient to authorize legislation which the Constitution prohibits. Attempted evasions of the Constitution, the object of which is to meet and overcome such local and special conditions, can not be tolerated. A due regard for the highest interests of the citizens of the State requires that all constitutional limitations and restrictions shall be firmly and constantly enforced.

In *Gulf, etc., R. Co.* v. *Ellis,* 165 U. S. 150, 159, 17 Sup. Ct. 255, 41 L. Ed. 666, the court say: "But arbitrary selection can never be justified by calling it classification. The equal protection demanded by the fourteenth amendment forbids this."

In *State* v. *Loomis,* 115 Mo. 307, 314, 22 S. W. 350, 21 L. R. A. 789, quoted with approbation in *Gulf, etc., R. Co.* v. *Ellis, supra,* it was said by Black, J.: "Classification for legislative purposes must have some reasonable basis upon which to stand. It must be evident that differences which would serve for a classification for some purposes furnish no reason whatever for a classification for legislative purposes. The differences which will support class legislation must be such as, in the nature of things, furnish a reasonable basis for separate laws and regulations. Thus the legislature may fix the age at which persons shall be deemed competent to contract for themselves, but no one will claim that competency to contract can be made to depend upon stature or color of the hair. Such a classification for such a purpose would be arbitrary and a piece of

School City of Rushville v. Hayes.

legislative despotism, and therefore not the law of the land."

Again, in *State, ex rel.,* v. *Hammer,* 42 N. J. L. 435, it was well said by the chief justice: "Plainly, a law may be general in its provisions, and may apply to the whole of a group of objects having characteristics sufficiently marked and important to make them a class by themselves, and yet such law may be in contravention of this constitutional prohibition. Thus, a law enacting that in every city in the state in which there are ten churches, there should be three commissioners of the water department, with certain prescribed duties, would present a specimen of such a law, for it would sufficiently designate a class of cities, and would embrace the whole of such class, and yet it does not seem to me that it could be sustained by the courts. If it could be so sanctioned, then the constitutional restriction would be of no avail, as there are few objects that can not be arbitrarily associated, if all that is requisite for the purpose of legislation is to designate them by some quality, no matter what they may be, which will so distinguish them as to mark them as a distinct class. But the true principle requires something more than a mere designation by such characteristics as will serve to classify, for the characteristics which thus serve as the basis of classification must be of such a nature as to mark the object so designated as peculiarly requiring exclusive legislation. There must be substantial distinction, having a reference to the subject-matter of the proposed legislation, between the objects or places embraced in such legislation and the objects or places excluded. The marks of distinction on which the classification is founded must be such, in the nature of things, as will, in some reasonable degree, at least, account for or justify the restriction of the legislation." See, also, *Board, etc.,* v. *Spangler,* 159 Ind. 575; *State, ex rel.,* v. *Parsons,* 40 N. J. L. 1; *Dixon* v. *Poe,* 159 Ind. 492, 60 L. R. A. 308; *Common-*

*wealth* v. *Patton,* 88 Pa. St. 258; *State, ex rel.,* v. *Jones* (Ohio), 64 N. E. 424; *City of Cincinnati* v. *Trustees, etc.,* 66 Ohio St. 440, 64 N. E. 420; *State, ex rel.,* v. *Bargus,* 53 Ohio St. 94, 41 N. E. 245; *Rauer* v. *Williams,* 118 Cal. 401, 50 Pac. 691; *Sutton* v. *State,* 96 Tenn. 696, 36 S. W. 697; *Angell* v. *Cass County,* 11 N. D. 265, 91 N. W. 72; *Indianapolis St. R. Co.* v. *Robinson,* 157 Ind. 232, 236; *Reed* v. *State,* 12 Ind. 641, 648.

The constitutional question presented in this case was not involved in any of the following: *City of Indianapolis* v. *Navin,* 151 Ind. 139; *City of Indianapolis* v. *Wann,* 144 Ind. 175; *Consumers Gas Trust Co.* v. *Harless,* 131 Ind. 446; *Young* v. *Board, etc.,* 137 Ind. 323; *Gilson* v. *Board, etc.,* 128 Ind. 65, 11 L. R. A. 835.

For the reasons stated, we are constrained to hold the act of March 9, 1903, *supra,* unconstitutional, because special and local. The complaint, therefore, was sufficient, and the demurrer to it was properly overruled.

We find no error. Judgment affirmed.