JOHN QUINN, JAMES HAGEY, CHARLES CLOY, TIM BOAL *v.* STATE OF INDIANA.

[No. 1170S274. Filed April 26, 1972. Rehearing denied June 19, 1972.]

*Brent A. Barnhart, David L. Allison, Allison and Barnhart,* of Indianapolis, for appellants.

*Theodore L. Sendak,* Attorney General, *Darrell K. Diamond,* Deputy Attorney General, for appellee.

ARTERBURN, C. J.—The appeals of these four appellants were originally filed in this court separately. They were consolidated under one cause number by order of the court. Separate records of proceedings and briefs of appellant have been filed, but with only minor differences.

Appellants John Quinn, James Hagey, Charles Cloy and Tim

Boal were charged by affidavit on March 19, 1970, with Interference with the Lawful Use of a Public Building as found in *Burns' Ind. Stat. Anno.*, (1971 Supp.) § 10-4534 which provides as follows:

"It shall be a misdemeanor for any person to go upon or remain within a public building for the purpose of interfering with the lawful use of such building by other persons or in such manner as to have the effect of denying to others the lawful use of such building."

Pleas of not guilty were entered and the case came to trial on April 24, 1970. The protesters were found guilty as charged. The judgment of the Municipal Court was as follows:

"The Court being duly advised in the premises, it is considered and adjudged by the Court that the defendant herein is guilty as charged in said affidavit, and for his punishment the Court does assess the said defendant be imprisoned in the Indiana State Farm for 180 days and that he make his fine to the State of Indiana in the sum of one hundred dollars ($100) and that he pay the cost of this prosecution, taxed at Fifteen Dollars ($15.00) and that the defendant stand committed to the Indiana State Farm until said fine shall be paid or replevied."

A notice of appeal and motion to correct errors was filed. The motion was overruled.

On July 1, 1970, the appeal and record were filed in the Marion Criminal Court, and was then set for hearing on August 20, 1970. The Criminal Court affirmed the conviction. The sentence, however, was affirmed in part and reversed in part. The judgment of the Criminal Court is as follows:

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the court that the Judgment be and hereby is affirmed as to the 180 days on Farm. Reversed as to Fine. Sheriff ordered to execute Commitment."

A motion to correct errors was filed and overruled. A praecipe was filed on November 16, 1970. It was then ordered by

the Criminal Court that the disc recordings of the proceedings in the Municipal Court be filed as part of the record without transcribing. The record of the proceedings, however, contains neither the disc recordings of the proceedings in the Municipal Court, nor a transcript thereof. Also, no statement of the evidence pursuant to A.P. 7.2 (A) (3) (c), *Indiana Rules of Procedure,* has been filed.

The facts of the case are not the same for each of the appellants. However, the acts of each are so close and legally similar in consequence, that it is proper to consolidate the cases for purposes of review.

During the week of March 16, 1970, several persons were arrested at the offices of the Marion County Local Board of the Selective Service System, located at 222 East Ohio Street, in the city of Indianapolis. In addition to the four parties now before us, six other persons were arrested. Each of the persons arrested was purportedly exercising symbolic opposition to the draft and to the war in Viet Nam.

John Quinn, one of the appellants herein, entered the Selective Service Office alone and went to the information desk and requested to see his own draft file. An employee brought him his file and Quinn opened it and began reading aloud from the material in the file. Quinn continued to read various materials, including a statement of general opposition to the war and the draft which he had sumitted to the Board to be included in his file. He also read aloud certain poetry which he felt expressed his personal feelings toward the war and the names of persons who had died in the war. During this time, police were called and they requested Quinn to stop reading and to leave. The provisions of *Burns' Ind. Stat. Anno.,* § 10-4534 were read to him by Colonel Rhodes of the Selective Service Office in the presence of two police officers. Quinn ceased reading and was then arrested.

The other three appellants were all involved in the same incident, so the wrongdoing of each appellant is comparable

to the wrongdoing of the others. The facts pertinent to the arrest of Hagey, Cloy and Boal are as follows. The three appellants entered the Marion County Selective Service Office with five other persons, several of whom were either ordained ministers or seminary students. All eight persons sat upon the floor and linked arms with one another. They sang some religious and protest songs, though there was no testimony that such singing was raucous or boisterous. There was testimony, however, that the protesters were partially blocking the path of entrance for some people who entered the office for the purpose of conducting business, but that no one was threatened or accosted. It was further testified to that one of the ladies working at the office walked through the protesters to reach a drinking fountain in the hallway; and, as the worker approached, the protesters moved aside to enable her to pass. The police were summoned and the provisions of *Burns' Ind. Stat. Anno.*, § 10-4534 were read to the protesters. When the protesters refused to leave they were all arrested. Boal, Hagey and Cloy were all tried and sentenced together.

Appellant presents four issues for our consideration. His first argument is that a government office, open to the general public for purposes of providing information concerning the operation of that particular government department, is a proper forum for the lawful expression of dissent to government policy; and such expression is protected by the first amendment guarantees of freedom of speech, freedom of press, freedom of assembly and freedom to petition the government for a redress of grievances, whether such expression is by spoken word, printed word, or by symbolic expression, so long as such expression does not overtly interfere with the necessary functions of that government office.

The statute, under which appellants were arrested and convicted, was tested for constitutionality in the recent case of *Campbell* v. *State* (1971), 256 Ind. 630, 271 N. E. 2d 463, in which a unanimous court held the statute constitutional. In upholding the constitutionality of the statute the court stated:

"The right of free expression, guaranteed by the first amendment to the Constitution of the United States, exists but as a unitary portion of a group of corollary ██ rights, each of which can only be exercised to the extent that such does not encroach upon or erode the others. The States, . . ., may regulate and restrain the exercise of the freedom of expression, thereby insuring to all the freedom from the abusive exercise of the rights of others, including the right of free expression, Burns' 10-4534, supra, is such an exercise of the States' power to restrain the abusive exercise of certain rights." 271 N. E. 2d at 464.

The real issue here is whether the acts of the appellants constitute a violation of *Burns' Ind. Stat. Anno.*, § 10-4534. We feel that they do. Under the facts presented here by the appellant, we feel that there was sufficient interference with the lawful use of the Selective Service Office to constitute a violation of the statute.

The case before us can be easily distinguished from the aforementioned case of *Campbell* v. *State* (1971), 256 Ind. 630, 271 N. E. 2d 463, which found appellant's conduct not in violation of the statute in which appellants herein are accused of violating. In the *Campbell* case the appellant entered the Selective Service Office alone and sat in a chair holding a sign with the words "DRAFT COUNSELOR" written on its face. The court found no evidence to show that appellant interferred with the business of the office or with the right of persons to enter or leave. They also found that he was not loud or boisterous, but merely sat quietly in a chair and disturbed no one. The court felt that such conduct could not be construed to be a criminal offense.

In the case before us, the facts are substantially different. To quote from appellant's briefs, "Unlike the *Campbell* case, of course, the defendant herein was not silent." The essential point that none of the appellants was silent is the crucial point that differentiates this case from *Campbell*. The reading aloud of poetry and names of war dead on the part of Quinn and the singing of protest songs on the part of the other three

appellants was a type of distraction calculated for interference, and was substantially different from that present in the *Campbell* case. Every citizen has the right to enter a library and sit quietly for whatever purpose he chooses; but that right does not extend to the point that one may read aloud, when such act disturbs others who are in the library trying to carry on their own business. The appellants in their own briefs admit that they were engaged in vocal activities including the singing of protest songs and reading of poetry. Such activities are within the intended coverage of *Burns' Ind. Stat. Anno.*, § 10-4534. Therefore, along with reaffirming that § 10-4534 is indeed constitutional, we also find that the application of the statute to the facts involved in this case was constitutional and its application was properly invoked.

The remainder of appellants' propositions of error question the constitutionality of *Burns' Ind. Stat. Anno.*, § 4-5811. Appellant first argues that the statute is unconstitutional as violating due process of law as guaranteed by the Fourteenth Amendment of the U. S. Constitution because the misdemeanor appellant has no access to the transcript of the Municipal Court.

Contrary to what appellants argue, we can find no case which explicitly states that such a stenographic transcript is an essential part of any appeal. The appellants' attorneys were allowed time and access to listen to the recording of the proceedings in the lower court and those proceedings were apparently rather brief. The same counsel which represented appellants in Municipal Court represented them in Criminal Court. The case law upon which appellant relies holds that the State must provide access to a transcript to make the appeal meaningful and that a free transcript must be provided if the appellant is indigent and cannot afford one. In this case there is no claim of indigency. As to the necessity of a transcript for the appellant, we quote from Chief Justice Burger of the United States Supreme Court, in his 1971 Federal Judiciary address to the American Bar Association when

he commented that: "The average criminal trial takes two and one-third days to complete, and except in a rare case no trial lawyer who represented the defendant in the trial, and who is worth his salt, needs a full trial transcript to conduct an appeal." We are unable to find *Burns' Ind. Stat. Anno.*, § 4-5811 unconstitutional because it does not mandatorily provide a method for furnishing appellant with a transcript.

Appellate Rule 7.2 (A) (3) (c) provides:

"If no report of all or part of the evidence or proceedings at the hearing or trial was or is being made, or if a transcript is unavailable, a party may prepare a statement of the evidence or proceedings from the best available means, including his recollection. If submitted contemporaneously with the matter complained of, the statement may be settled and approved by the trial court. If submitted thereafter, the statement shall be served on other parties who may serve objections or prepare amendments thereto within ten (10) days after service. The statement and any objections or prepared amendments shall be submitted to the trial court for settlement and approval and as settled and approved shall become a part of the record and be included by the clerk of the trial court in the record.
If statements or conduct of the trial judge are in controversy, the statement shall be supported by sworn affidavit which shall be submitted to the trial judge for his certification. If he refuses to certify the statement he shall file opposing affidavits. All such affidavits shall be included in the record by the clerk of the trial court."

Appellant apparently did not avail himself of the opportunities for getting a statement of fact or a transcript if he so desired. The fact of the matter is, he restates the facts in his brief and points out no difficulties in that respect. We have used the appellants' own factual statement of the evidence as a basis for the opinion in this case.

Appellant next argues that the grounds for appeal found in *Burns' Ind. Stat. Anno.*, § 4-5811 are unduly restricted. *Burns' Ind. Stat. Anno.*, (1971 Supp.) § 4-5811 reads, in pertinent part, as follows:

"Such review shall be requested in the trial court within ten (10) days of final judgment and shall be based upon written motions alleging one or all of the following reasons: (1) Denial of specific constitutional rights. (2) Total failure of evidence upon any material issue as charged. (3) Substantial irregularity of legal procedure or law as specified . . ."

Appellant argues that any other basis for appeal to the Criminal Court from the Municipal Court is denied. The grounds for appeal are thereby unduly restricted to the point where the statute violates due process of law. In response to this argument we must first make note that no attempt has been made to show that any lack of grounds for appeal prejudiced appellant's case. It is well settled law that a party litigant who was not deprived of any rights cannot maintain an appeal on a theory that someone else might be deprived of a right. Only injured parties can maintain an appeal, otherwise the issue is moot. In this case appellants have shown no prejudice, or that they were deprived of their appeal on any ground. Therefore, they show no error.

Appellant's final argument alleges that *Burns' Ind. Stat. Anno.*, (1971 Supp.) § 4-5811 is unconstitutional in that it deprives the appellant of equal protection of the law in that he is without suitable guarantees of procedural due process when other citizens of other smaller counties have available recourse from misdemeanor convictions in the form of trial de novo. In § 4-5811 it is provided that appellate review of misdemeanor convictions in the Marion County Municipal Court shall be heard in the Marion Criminal Court. In all other Indiana jurisdictions trial de novo is available. This argument is based on the fallacy that equal protection of the law demands absolutely identical treatment of all persons in all cases. However, it has long been settled that the constitution imposes no such straightjacket on the law. The legislature is allowed to differentiate by making different provisions for the different classes thus established. *Caesar* v. *DeVault* (1957), 236 Ind. 487, 141 N. E. 2d 338.

In that case, the court included the following language from the case, *School City of Rushville* v. *Hayes* (1904), 162 Ind. 193, 200, 70 N. E. 134, 137.

"It is obvious that cities having a population of 100,000 or more may require larger and more varied powers than such as contain a population of 10,000 or less. The political needs of the larger community may be of a different nature, and the forms and methods by which its affairs must be administered may be more extensive, complicated, and elaborate than those required in a municipality of smaller population."

A consideration of the classification in this case shows that municipal courts are established only in counties in which there is a first class city.

Differences in population is a reasonable classification because the greater population allows and requires more complex provisions. The effect of providing a review of the record rather than a trial de novo is to conserve time and effort by eliminating the cumbersome and expensive requirement of duplicating the whole trial process. The legislature was clearly acting within its powers in making the appeal provisions as it did.

Finding no merit in any of appellants' contentions of error we must affirm the judgment of the trial court.

Judgment of the trial court is affirmed.

Givan, Hunter, Prentice, JJ., concur; DeBruler, J., concurs in result with opinion in which Prentice, J., concurs.

### Opinion Concurring in Result

DeBruler, J.—Subsequent to the finalization of the majority opinion, certified recordings of these trials were brought before us upon our order. The evidence in them is that Quinn was reading in a loud and disturbing manner. An employee of the office testified that she was unable to work on a report which had been assigned to her because of his conduct. In the case of the other four appellants, the evidence reveals that they

were among six persons who blocked the door to the office by sitting in front of it on the floor, interlocking their arms, and forming a human chain. A witness for the State testified that two persons, one a marine enlistee, was required to climb over their interlocked arms in order to enter the office. In light of these additional facts, I concur in the result.

Prentice, J., concurs.

NOTE.—Reported in 281 N. E. 2d 478.