v.

**STATE of Indiana, Appellee–Petitioner.**

No. 49A05–0311–JV–566.

Court of Appeals of Indiana.

June 3, 2004.

Transfer Denied Aug. 4, 2004.

Joel M. Schumm, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ryan D. Johanningsmeier, Deputy Attorney General Indianapolis, IN, Attorneys for appellee.

**OPINION**

BAKER, Judge.

Appellant-respondent J.H. appeals his adjudication for Driving a Vehicle Without a License,[1] an offense that would be a class

---

**1.** Ind.Code § 9–24–18–1.

C misdemeanor had it been committed by an adult. Specifically, J.H. argues that the adjudication must be set aside because he did not freely and voluntarily waive his right to counsel at the initial hearing, inasmuch as he was not properly advised of the nature, extent and importance of his right to counsel. Moreover, J.H. contends that the delinquency determination must be set aside because the trial court erred in not warning him of the dangers or pitfalls of self-representation prior to pleading guilty. Concluding that J.H. has not filed a motion for relief from judgment pursuant to Indiana Trial Rule 60, we dismiss this appeal and remand this cause to the trial court for the purpose of permitting J.H. to file such a motion.

### FACTS

On September 26, 2003, seventeen-year-old J.H. borrowed his girlfriend's automobile. At some point, J.H. collided with another vehicle, and it was later determined that he did not have a valid operator's license. As a result, the State filed a delinquency petition on September 29, 2003, charging him with the above offense.

When J.H. and his mother appeared at the initial hearing three days later, J.H. and his mother acknowledged to the trial judge that they understood the allegations set forth in the petition. The following colloquy then took place:

THE COURT: [J.H.], I need to advise you that you have the right to have an attorney, a continuance to get an attorney, and if you cannot afford an attorney, one will be appointed to you at public expense, do you understand that?

RESPONDENT: Yes sir.

Tr. p. 4.

. . .

THE COURT: And while you were in detention, did you watch a video tape in which the Judge explained your rights and this Court's alternatives?

RESPONDENT: Yes sir.

THE COURT: Did you understand it?

RESPONDENT: Yes sir.

THE COURT: And folks, did you also watch that video tape while you were out in the waiting room?

MOTHER: Yes.

THE COURT: Did you understand it?

MOTHER: Yes.

THE COURT: And are you satisfied that he understands it?

FATHER: Yes.

MOTHER: Yes.

. . .

THE COURT: Alright [J.H.], among the rights you have is the right to have an attorney a continuance to get an attorney, and if you cannot afford an attorney, one will be appointed to you at public expense. Do you think you need an attorney in this matter?

MOTHER: No, 'cause you guilty.

RESPONDENT: No sir, I'm going to plead guilty.

THE COURT: Alright. Folks, do you think he needs an attorney?

MOTHER: No.

THE COURT: Alright, showing a knowing, lawful waiver of your right to have an attorney. [J.H.] do you wish to admit or do you wish to deny that violation?

RESPONDENT: I admit sir. I admit.

THE COURT: Do you understand that by admitting that petition, you're waiving your rights and that the Court advisement of rights, including your right to remain silent and you're gonna have to tell the Court what happened here today, do you understand that?

RESPONDENT: Yes sir.

Tr. p. 5–6. Following this exchange, J.H. acknowledged to the trial court that he was admitting the allegations of the petition of his "own free will." Tr. p. 6. After informing the trial court that he did not have a driver's license when he took his girlfriend's automobile and slid into another vehicle, a sufficient factual basis was found to adjudicate J.H. a delinquent child. Finding that J.H. had been on parole when he committed the instant offense and further observing that he had a "lengthy history with this Court, with several violations," Tr. p. 9, the trial court recommitted J.H. to the Department of Correction with a recommendation that he serve twelve months. J.H. now appeals.

## DISCUSSION AND DECISION

The dispositive issue here is whether, as the State argues, the appeal must be dismissed because J.H. was obligated to file a motion for relief from judgment in accordance with Indiana Trial Rule 60(B). As our supreme court observed in *Tumulty v. State,* "[o]ne consequence of pleading guilty is restriction of the ability to challenge the conviction on direct appeal." 666 N.E.2d 394, 395 (Ind.1996). So too, in juvenile cases, our supreme court has determined that a defendant may not appeal a delinquency adjudication following his admission to the facts of the offense. *M.Y. v. State,* 681 N.E.2d 1178, 1179 (Ind.Ct. App.1997). While post-conviction remedies are not available to juveniles, *see Jordan v. State,* 512 N.E.2d 407, 408 (Ind. 1987), the appropriate remedy for relief that a juvenile defendant must seek is through the filing of a Trial Rule 60 motion. *See Haluska v. State,* 663 N.E.2d 1193, 1194 (Ind.Ct.App.1996). Inasmuch

as J.H. is attacking the validity of his admission to the offense and he has failed to file a motion pursuant to Trial Rule 60, we are compelled to dismiss this appeal. Thus, we remand this cause to the trial court for the purpose of permitting J.H. to file therein a motion for relief from judgment.

Appeal dismissed.

FRIEDLANDER, J., concurs.

BAILEY, J., concurs with opinion.

BAILEY, Judge, concurring.

I concur with the majority's holding that, because seventeen-year-old J.H. admitted to committing the offense of driving a vehicle without a license, he may only challenge his adjudication of delinquency in a subsequent motion for relief from judgment pursuant to Indiana Trial Rule 60. *See, e.g., M.Y. v. State,* 681 N.E.2d 1178, 1179 (Ind.Ct.App.1997). However, I write separately to express my concern that the Marion Superior court's jurisdiction and subsequent adjudication of J.H. as a juvenile delinquent, rather than an adult offender, may be in contravention of Article I, Section 23 of the Indiana Constitution.

Article I, Section 23 of the Indiana Constitution provides, in pertinent part, that our legislature "shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens." Our supreme court has held that Section 23 should be applied and interpreted independent of the Equal Protection Clause of the United States Constitution.[2] *Collins v. Day,* 644 N.E.2d 72, 75 (Ind.1994). Two

2. The Equal Protection Clause provides as follows: No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of laws.

factors must exist for a statute to pass muster under Section 23. *Id.* First, the disparate treatment accorded by the statute must be reasonably related to inherent characteristics that distinguish the unequally treated classes. *Id.* Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated. *Id.* at 80. In considering these factors, we must give considerable deference to the legislature's balancing of the competing interests involved. *Id.*

In Indiana, juvenile courts do not have jurisdiction over a "child at least sixteen (16) years of age who allegedly committed a violation of a traffic law, the violation of which is a misdemeanor, unless the violation is an offense under [Indiana Code Section 9–30–5.[3]]" *See* Ind.Code § 31–30–1–2 (setting forth the applicability of juvenile law to infractions and violations of traffic law and ordinances). But, in Lake and Marion counties, juvenile offenders benefit from special legislation that confers juvenile jurisdiction for what would otherwise be misdemeanor traffic offenses. *See* Ind.Code §§ 31–30–1–8 (juvenile jurisdiction of the Marion superior court); and 33–5–29.5–4 (juvenile jurisdiction of the Lake County superior court). In particular, Indiana Code Section 31–30–1–8 provides that:

The juvenile division of the Marion superior court established under IC 33–5.1–2 has exclusive jurisdiction over a child who:

(1) has been taken into custody in Marion County; and

(2) has allegedly committed an act that would be a misdemeanor traffic offense if committed by an adult.

Similarly, Indiana Code Section 33–5–29.5–4(b) provides that:

(b) Notwithstanding IC 31–30–1–2, the juvenile court has exclusive jurisdiction over a child who:

(1) has been taken into custody in the county; and

(2) has allegedly committed an act that would be a misdemeanor traffic offense if committed by an adult.

By their express terms, these statutes give the juvenile division of the Marion and Lake Superior courts exclusive jurisdiction over children—including those at least sixteen years old—who commit misdemeanor traffic offenses. These statutes authorize the court to impose juvenile dispositions instead of criminal adjudications on certain misdemeanor traffic offenders that are sixteen years of age or older.

Pursuant to Indiana Code Section 31–30–1–8, the juvenile court of Marion County had jurisdiction over J.H. when it entered the dispositional order. Nevertheless, the adjudication of J.H.—whether it be: (1) wardship to a juvenile facility wherein the juvenile court determines the least restrictive and most appropriate setting available;[4] or (2) a term of incarceration pursuant to the laws governing adult offenders—should be in accordance with that of other seventeen-year-old juveniles guilty of committing the offense of operating a vehicle without a license, who, by mere happenstance, commit the offense in counties other than Marion or Lake.[5] Put

---

3. The offense at issue is not an offense under Indiana Code Section 9–30–5. Rather, the offense of driving a vehicle without a license is an offense under Indiana Code Section 9–24–18–1.

4. Ind.Code § 31–37–18–6.

5. In the equal protection context, our supreme court has held that:

It is obvious that cities having a population of 100,000 or more may require larger and more varied powers than such as contain a population of 10,000 or less. The political needs of the larger community may be of a

another way, a juvenile who commits a misdemeanor traffic offense in Marion or Lake county should not be afforded better treatment than a juvenile similarly-situated in another Indiana county, unless the disparate treatment—i.e., the immediate penal consequences and, perhaps more importantly, the ensuing criminal record or lack thereof—is rationally related to the inherent characteristics that distinguish the unequally treated classes—i.e., the county wherein the juvenile commits the offense.[6] Because the issue of whether Indiana Code Section 31–30–1–8 violates Article I, Section 23 of the Indiana Constitution is not squarely before us today, and because this Court does not issue advisory opinions on constitutional issues, I decline to express an opinion on the constitutionality of the statutes at issue. However, Indiana Code Sections 31–30–1–8 and 33–5–29.5–4 may not survive constitutional scrutiny because they give Marion and Lake counties the authority to adjudicate certain misdemeanor traffic offenders as juveniles, rather than to try them as adult offenders. As such, these statutes are juxtaposed to Indiana Code Section 31–30–1–2, which exposes children—sixteen years of age or older—in the other ninety Indiana counties to criminal liability for commission of the same misdemeanor traffic offenses. Thus, this constitutional issue is still viable for debate inasmuch as the county wherein a juvenile commits the misdemeanor traffic offense may not be rationally related to the ultimate disposition for that offense.

For these reasons, I concur and write separately.

---

different nature, and the forms and methods by which its affairs must be administered may be more extensive, complicated, and elaborate than those required in a municipality of smaller population. *Quinn v. State*, 258 Ind. 399, 408, 281 N.E.2d 478, 483 (1972) (quoting *School City of Rushville v. Hayes*, 162 Ind. 193, 200, 70 N.E. 134, 137 (1904)). I agree that Marion County's population may necessitate jurisdiction of children, at least sixteen years old, who commit traffic offenses in juvenile, as opposed to adult, courts. However, the penal consequences imposed on such traffic offenders should not be different from those imposed on similarly situated offenders who reside in counties other than Marion or Lake.

6. The preferential treatment at issue—i.e., expanded juvenile jurisdiction—is uniformly applicable and equally available to all persons similarly situated—i.e., those juveniles that live in Marion County. As such, the second prong of the *Collins* test is not implicated on these facts.