BRUMBY *v.* BOARD OF LIGHTS AND WATERWORKS *et al.*

1. Taxpayers of a city have such an interest in the money raised by taxation for municipal purposes as to maintain a suit to restrain the creation or payment of illegal debts by the municipality.

2. The act of the General Assembly (Acts 1906, p. 846) empowering the Board of Lights and Waterworks for the City of Marietta to "take the proceeds of any bonds sold for the purpose of creating a system of waterworks and build and erect such waterworks to the best advantage of the city, and to this end, if they think best and proper, can purchase and acquire any property now owned and operated by any other company," and to "make all contracts for the lights and water supply for the City of Marietta," did not authorize such board, after it had built

and equipped an electric-light and waterworks plant, to pay fifteen thousand dollars to a competing company to "quit operating its electric-light plant in the city," where under the contract the board obtained nothing in the way of plant, poles, wire, or other property of any kind from the selling company, and where the consideration was not money arising from an authorized sale 'of bonds, but by paying part of the purchase-price with unauthorized borrowed money and creating a new debt for the remainder, payable in notes due beyond the year in which they were executed. Such contract is illegal, and the payment of such notes can be enjoined at the instance of a taxpayer of the municipality. This ruling makes it unnecessary to decide whether the contract would have been legal had the consideration therefor been obtained from the sale of the bonds authorized by the act.

3. Where one is asserting against several persons a right in which there is a common connection, equity will determine the whole matter in one action.

No. 365. JANUARY 15, 1918. REHEARING DENIED FEBRUARY 16, 1918.

Equitable petition. Before Judge Searcy. Cobb superior court. April 25, 1917.

B. G. Brumby brought his petition against the Board of Lights and Waterworks of Marietta, hereinafter referred to as the board, the Kennesaw Paper Company and William Niller, its trustee and alleged owner (hereinafter referred to as the Niller Company), and E. P. Dobbs; and alleged substantially as follows: The board is an auxiliary corporation of the City of Marietta, created for the purpose of installing and operating a waterworks and electric-light system for the city and the citizens and consumers within its corporate limits. The board was created by an act of the General Assembly approved August 20, 1906 (Acts 1906, p. 846), which was amended by an act approved August 14, 1909 (Acts 1909, p. 1099). This board and their successors in office were created with a limited authority and mandatory duties. A part of the authority and duties of the board under the act were: (a) To have charge of the erection, building, operation, and supply of water for the City of Marietta, and to have all the powers now vested in the mayor and council for this purpose. (b) To make all contracts for lights and water supply for the City of Marietta, with power to regulate the water and light rates in the city, and to supply the people of the city with water at a fair and equitable rate. (c) To take the proceeds of any bonds sold for the purpose of erecting a system of waterworks, and build and erect the waterworks to the best possible advantage of the city, and to this end, if they think best and proper, to purchase and acquire any property now owned

38

and operated by any other company.    Under the acts creating the board the clerk of the city council is ex-officio clerk of the board, with direction that no funds shall be paid out by the treasurer of the board except on vouchers regularly passed by the board, drawn by the clerk, and countersigned by the chairman.    Under the above acts, the board was limited, in its authority to install and operate a waterworks and electric-light system for the City of Marietta, to the funds arising from the sale of bonds issued for that purpose. Under the authority so vested in the board, they elected to install, build, and equip a waterworks and electric-light system for the city, and did not exercise the right to purchase from any other company in existence; and in the exercise of the election to build they spent all the money arising from the bond issue, and in addition thereto created a heavy indebtedness without authority of law. At the time of the creation of the board and the voting of the bond issue to construct and install the waterworks and electric-light system, there was in existence and operation in the city an electric-light system owned by the Kennesaw Paper Company, hereinafter referred to as the Niller Company.    From the date of the beginning of the operation of the electric-light system by the board, the Niller Company has been a competitor of the board in the furnishing of electricity and lights to citizens and consumers of the city, the Niller Company generating electricity at its own plant in the City of Marietta.    The board generated electricity at its plant for several years, and then shut down its plant and purchased its electricity from the Georgia Power Company.    The board, after having spent all the funds arising from the sale of bonds issued for creating, installing, and operating the electric-light system, contracted and agreed to pay the Niller Company fifteen thousand dollars to quit operating its electric-light plant in the city.    Of the amount of consideration just stated, $3,000 cash was borrowed by the board from E. P. Dobbs, who was at that time a member of the board, the board executing to him its promissory note for $3,000, maturing Dec. 31, 1916; and for the balance of the purchase-price, $12,000, the board executed its promissory notes payable to the Niller Company in annual instalments of $3,000 each, all the notes bearing interest at the rate of 6 per cent. per annum from Dec. 31, 1915.    Under the contract the board obtained nothing in the way of plant, poles, wire, or other

property of any kind from the Niller Company or any one else; they simply made this contract and agreed to pay the $15,000 to have the Niller Company cease operating its electric-light system in the City of Marietta. The board was without authority of law to make this contract, or to create the indebtedness by executing notes for $15,000 or any part thereof; and their act was ultra vires. A large commission was given and obtained for said contract; and it is prayed that all the defendants be required to discover and answer under oath what this commission was, and to whom it was paid; also whether the notes have been discounted, and to whom, and what amount of discount was allowed or paid. The indebtedness of $15,000 for the hiring of another company to quit operating its electric-light system, and to an additional amount of more than $19,000, was created by the board without authority. The board did not comply with the constitutional provisions for the creation of a debt; there was no vote of the qualified voters of the city, no act of the General Assembly so authorizing, nor did the mayor and council so authorize. All the defendants knew these facts at the time the contract was executed and at the time the notes were given and received.

By amendment the plaintiffs alleged that at the time of the making of the contract the board knew that the Kennesaw Paper Company could not compete with the board in furnishing electricity, and knew that the Kennesaw Paper Company could not have continued the operation of its lighting plant beyond a short time from the time of the contract, because of its insolvent and failing condition and lack of equipment; that no suit could be maintained against the board for the notes, for the reason that it had no property of its own, and no funds out of which a judgment could legally be satisfied. Plaintiffs prayed that the board be enjoined from paying or renewing any of the notes referred to, that the Niller Company and Dobbs be enjoined from transferring the notes and from proceeding to collect them; and that they be required to deliver up the notes to be canceled. A demurrer to the petition as amended was sustained, and the plaintiffs excepted.

*Mozley & Gann, Roberts & Anderson,* and *J. Z. Foster,* for plaintiff.

*D. W. Blair, E. H. Clay, Campbell Wallace, Fred. Morris,* and *Anderson & Rountree,* for defendants.

HILL, J.    (After stating the foregoing facts.)

1.    The third ground of the demurrer of Niller, trustee, raises the question whether the plaintiff has such an interest in the subject-matter of this suit as entitles him to bring this action, or to any of the relief prayed for.    The petition alleges that the plaintiff is a citizen and taxpayer of the City of Marietta, and sets out in detail the grounds for the relief sought.    Taking as true the facts alleged, as we must on demurrer, the plaintiff has such an interest in the subject-matter of the suit as entitles him to bring it.    He is a taxpayer of the city, and as such has an interest in the funds arising from municipal taxation.    If such funds are being used, or are about to be used, for the purpose of paying an illegal debt created by the corporation, or an illegal contract has been executed by the corporation which would eventuate in payments under the illegal contract by the corporation, then the plaintiff would have such interest in the subject-matter of the suit, having for its purpose the canceling of the contract and the enjoining of payment of money pursuant thereto, as to authorize him to bring and maintain the action.    *Renfroe* v. *Atlanta,* 140 *Ga.* 81 (4), 82 (78 S. E. 449, 45 L. R. A. (N. S.) 1173).

2.    Was the contract illegal?    The corporation has no authority except such as is conferred on it by law.    The statute creating it must be strictly construed.    "Municipal corporations shall not incur any debt until provision therefor shall have been made by the municipal government."    Constitution, art. 7, sec. 10, par. 1 (Civil Code, § 6567).    The board of lights and waterworks was created by an act of the General Assembly, approved August 20, 1906 (Acts 1906, pp. 846, 848, sec. 5).    By this act it is provided that the board "shall make all contracts for the lights and water supply for the City of Marietta, shall have power to regulate the water and light rates in the city, and shall supply the people of said city with water at a fair and equitable rate.    They shall have power to make any and all contracts with any other company supplying water to the city, and to do any and all things necessary to the carrying out of the objects of this bill.    Said board of lights and waterworks shall take the proceeds of any bonds sold for the purpose of erecting a system of waterworks and build and erect such waterworks to the best advantage of the city, and to this end, if they think best and proper, can purchase and acquire any prop-

erty now owned and operated by any other company." This act also provides for an election by the qualified voters of Marietta to determine whether bonds shall be issued and sold for the purpose of "purchasing, establishing, maintaining, building, and acquiring" a system of waterworks for the City of Marietta, etc. By the act of 1906 (supra) the authority of the board was limited to the purposes set out above; and when they contracted to pay the Kennesaw Paper Company to "quit operating its electric-light plant" in the City of Marietta as a competing company—not for the purpose of operating it as a waterworks or electric-light plant, but merely to remove a competitor in business, themselves receiving nothing in the way of plant, poles, wire, or other property of any kind, from the Kennesaw Paper Company, the board exceeded their powers, and their act was ultra vires. This Kennesaw Company was a competitor of the system created by the City of Marietta; and while the board was authorized by the act of 1906 to make contracts for the light and water supply for the City of Marietta, they had no authority of law to pay a competing electric plant to cease business, and to create a debt therefor, simply for the purpose of getting rid of it as a competitor. This being true, the contract was an illegal one, and the court erred in sustaining the demurrer and dismissing the petition.

3. Another ground of the demurrer is that "the petition is multifarious in that it contains a misjoinder of actions and of parties." It is argued that it is not proper to join in one action a suit to enjoin the payment of the notes made to Niller, and a suit to enjoin the payment of the note made to Dobbs. We do not think this contention is sound. The whole transaction here was part of a common purpose of the defendants to pay the Kennesaw Paper Company to quit business on the one hand, and of the company to accept payment therefor on the other. There is a common nexus in the whole transaction. The one common right sought to be established is a decree that the board of lights and waterworks was without legal authority to create a debt of the character set out in the petition; and in such case equity will determine the whole matter in one action. Civil Code (1910), § 5419; *East Atlanta Land Co.* v. *Mower,* 138 *Ga.* 380 (3), 384 (75 S. E. 418) ; *Portwood* v. *Huntress,* 113 *Ga.* 815 (39 S. E. 299).

*Judgment reversed. All the Justices concur, except Atkinson, J., dissenting.*