BOARD OF LIGHTS & WATERWORKS *v.* NILLER, trustee.

BOARD OF LIGHTS & WATERWORKS *v.* DOBBS.

1. The exceptions to the auditor's report are sufficient in form.
2. The court erred in overruling the exceptions to the auditor's finding that the plaintiff trustee was entitled to recover $12,000 with interest.
3. The issues raised by the demurrers to the answers in the case of *Dobbs* v. *Brumby,* 150 *Ga.* 599 (104 S. E. 440), were substantially the same as in the present cases.
4. These cases distinguished from previous rulings cited.
5. The trustee plaintiff, having assigned the notes given for purchase of properties that he agreed to sell to the Board of Lights and Waterworks, had no further interest in them; and any right to maintain an action to recover the value of the properties passed to his assignee. He therefore failed to make out a case for recovery.
6. When property is received by a municipality or its commission under

a contract which is void and unenforceable under the constitution, the law does not raise an implied undertaking to pay therefor.
RUSSELL, C. J., and ATKINSON, J., dissent.

Nos. 3219, 3220. MARCH 3, 1923.

Equitable petitions. Before Judge Searcy. Cobb superior court. April 19, 1922.

*J. Z. Foster*, for plaintiff in error.

*Anderson, Rountree & Crenshaw, Campbell Wallace, Fred Morris, Herbert Clay*, and *George F. Gober*, contra.

HINES, J. 1. The failure of a party excepting to an auditor's report on matters of fact, or on matters of law depending for decision upon the evidence, to set forth, in connection with each exception of law or fact, the evidence necessary to be considered in passing thereon, or point out the same by appropriate reference, or to attach as exhibits to his exceptions those portions of the evidence relied on to support the exceptions, is sufficient reason, in an equity case, for refusing to approve the exceptions of fact and for overruling the exceptions of law. *Armstrong* v. *Am. Nat. Bank*, 149 *Ga.* 165 (99 S. E. 884). The exceptions of law and fact to the report of the auditor in this case comply with the above requirement.

2. William Niller as trustee and the Board of Lights and Waterworks of the City of Marietta entered into a contract by which the former agreed to sell to the latter, for the sum of $15,000, all of the electric-lighting and power business then operated by said trustee, including all outstanding contracts and franchises then enjoyed by such trustee or before that time owned and enjoyed by the Kennesaw Paper Co., and the good-will of said trustee and said Kennesaw Paper Co. in respect to said electric-lighting and power business in and around the City of Marietta, but not including any of the physical assets, cash on hand, bills, notes, and accounts receivable, or any other choses in action or contracts, except contracts made with customers for furnishing electric light and power. Said board agreed to assume and carry out all legal contracts then existing between said trustee or the Kennesaw Paper Co. and any of its patrons for the furnishing of electric light and power as long as such contracts continued to be a legal obligation on either of said parties. The trustee agreed to completely dismantle said equipment, removing all poles, wires, and other operating equipment from the streets, al-

leys, and by-places in the City of Marietta, except the line from the paper-mill owned by said trustee or from such other general station as he might establish to the paper-plant connected with the waterworks system owned and operated by the trustee for the purpose of supplying light and power in the operation of said waterworks plant and the mill property. Said trustee further agreed that neither he nor any successor of his or the Kennesaw Paper Co. would at any time thereafter, provided the board complied with its agreements under said contract, operate any electric-light and power plant in the City of Marietta or the County of Cobb; and further agreed that he or his successor as such trustee would, upon the final payment of all of the purchase-money provided in said agreement to be paid, make an absolute and unconditional conveyance to said board of all the property contracted to be sold. It was not shwn that the trustee had made an absolute and unconditional conveyance to said board of the property contracted to be sold; and no offer so to do was alleged or proved. The franchise under which said trustee was operating his light and power plant in the City of Marietta was not an exclusive one, and the grant thereof by the city did not inhibit the latter from building and operating a similar plant in said city. Before said agreement was made the board had built and was operating a light and power plant within said city; and the competition between the municipal plant and the plant of said trustee was sharp. The trustee sold to said board certain physical properties of his plant, consisting of transformers, meters, and wires, for which he was paid by the board $1500, being 50 per cent. of the then existing market value of such material. Certain witnesses testified that in their opinion the value of the franchise, the good-will of customers, the agreement of the trustee to discontinue his business and never again operate in Marietta, and the right of the board to buy the physical properties of the trustee at half price, was $15,000. The trustee dismantled his plant. Thereafter the receipts of the board from the operation of its plant were largely increased, due to the elimination of the competition of the plant of the trustee. The auditor found as a matter of fact that the value of these intangible assets amounted to $15,000, and as a matter of law that the plaintiff was entitled to recover the sum of $12,000, with interest. To these

findings the board filed their exceptions, which were overruled by the court.

As the board had received none of the physical assets of the trustee for which he had not been paid, and as the board was not authorized to purchase the above intangible assets (*Brumby* v. *Board of Lights and Waterworks,* 147 *Ga.* 592, 95 S. E. 7), and as the trustee was not to make an absolute and unconditional conveyance of the above properties until the final payment of all the purchase-money, the law under such circumstances does not raise an implied promise on the part of the board to pay for such intangible assets. So the court erred in not sustaining the above exceptions of law and fact taken by the board to the findings of the auditor.

3. One Brumby, a citizen and taxpayer of Marietta, filed his equitable petition against said board, said trustee, and E. P. Dobbs, to enjoin the payment of the notes given to the trustee in part payment for the intangible assets referred to in the last paragraph, and the note given by the board to Dobbs for the sum of $3000 with which the board paid the initial payment on the purchase-price of said assets, on the grounds, that the board was without authority at law to make said contract for the purchase-money of said assets, and to create the indebtedness represented by said notes; and because said indebtedness was created without the sanction of a popular vote, in violation of the constitutional provision governing the creation of said debt by said city. This court held that said contract was illegal, and that the payment of said notes should be enjoined. *Brumby* v. *Board of Lights and Waterworks,* supra. Thereafter the defendants amended their answers to the petition, and set up the same facts in substance as are now alleged in their petitions in the cases now under consideration. In his amendment Dobbs alleged: " Whilst this defendant insists . . that said contract was legal and binding, he alleges and charges that, whatever view the court might take of the validity of the contract, but considering, as plaintiff alleges, that in such case the city board got from this defendant $3000 and used it for a purpose within its corporate powers and spent it for the betterment of its plant, . . this defendant should not be deprived of his money." He further alleged: " The said city board obtained the money of this defendant and ap-

plied it to the furtherance and enlargement of a lawful corporate public utility, which said utility the city board now has and owns and operates for the use and benefit of the City of Marietta, her citizens and taxpayers, . . partly paid for with this defendant's money, . . and in equity and good conscience the said city board should be permitted to refund to and make full compensation to. this defendant of the money so had and received, and not be allowed to replenish its treasury to the loss, damage, hurt and injury of this defendant, who advanced to the said city board his money in good faith. . . For the reasons herein set out this defendant prays that the relief asked for by the plaintiff be denied, and that the petition be dismissed." The trustee alleged in his amendment that the board had "actually taken and received the transfer of the business, the franchises, and contracts owed by this defendant as a going concern," and "this defendant having, in good faith and in compliance with the terms and provisions of the contract between him and said board, dismantled his plant, taken down the poles, wires, and other equipment, and discontinued the business conducted by him, so that the sale of this business to said board should in no wise be limited or interfered with, the said board should be permitted to pay the obligation assumed by it in connection with such purchase, or at least to pay the purchase-price in whatever form such obligation may be said to exist; and the injunction prayed for should be denied, or so modified that the board should be permitted and directed to pay the purchase-price or to restore the parties to their original status, regardless of whether the court believes the notes outstanding are valid or not or could be enforced or not." To these amendments to the answers of the defendants the plaintiffs demurred. The court sustained the demurrers. In the judgments sustaining the demurrers it was provided that "this order is without prejudice to any right that the defendant may have, if any he has, for restitution from the Board of Lights & Waterworks." To the judgments sustaining the demurrers to their amendments to their answers, the defendants excepted and took their cases to this court, where the judgments of the court below were affirmed. *Dobbs v. Brumby,* 150 *Ga.* 599 (104 S. E. 440). The judgment of this court was made the judgment of the lower court. To the petitions in the present cases the board

pleaded the former judgments in bar of the present actions. The auditor held that the issues in the *Brumby* case and in the present cases were not the same; and that the judgments rendered in the former case would not adjudicate the matters involved in the present suits. The issues raised by the demurrers to the amendments to answers of the defendants in the *Brumby* case, supra, were in substance the same as those involved in the instant cases; and the judgments in the former case, in effect, held that the plaintiffs were not entitled to recover either on the express contracts set up in the petition or upon implied promises set up in these amendments to the answers of the defendants, to pay for the property purchased from the defendant trustee, and used by the board for the benefit of the City of Marietta and of its inhabitants, and to pay Dobbs for money borrowed by the board to pay for property purchased by the board from the trustee, and used by the city in the operation of its plant. In these amendments the defendants set up the same rights which they seek to set up and enforce in the cases now under consideration; and Dobbs expressly prayed that the board " be permitted to refund to and make full compensation to this defendant of the money so had and received," and Niller as trustee asked that " the injunction prayed for should be denied, or so modified that the board should be permitted and directed to pay the purchase-price or restore the parties to their original status, regardless of whether the court believes the notes outstanding are valid or not or could be enforced or not." It thus appears that the plaintiffs sought to enforce the same rights which they now assert. In sustaining the demurrers to these amendments to their answers in the *Brumby* suit, the court necessarily decided that these plaintiffs were not entitled to maintain actions for money had and received against the board. The provisions in each of these judgments that it was " without prejudice to any right that the defendant may have, if any he has, for restitution from the Board of Lights & Waterworks," only reserved the right of each defendant, if any such right he has, to maintain an action against this board for restitution, which right we have undertaken to show does not exist in the first place, and the actions of the plaintiffs were not for restitution.

4. The rulings herein made do not conflict with the principle announced in *Butts County* v. *Jackson Banking Co.,* 129 *Ga.* 801 (60 S. E. 149, 15 L. R. A. (N. S.) 567, 121 Am. St. R. 244), and similar cases, in which it was held that where money obtained by counties and municipalities, under express contracts which were void and unenforceable, was applied to the payment of lawful demands against the counties or municipalities, the latter would be "liable for money had and received by them and applied to their authorized objects, although the contract by which the money was obtained was unauthorized by law." In the instant cases this court held that this board was not authorized to purchase these properties of the trustee, even if the board had the money on hand with which to pay for them in full (*Brumby* v. *Board of Lights and Waterworks,* supra) ; and this ruling being right, the board could not pay out the money of the city, either on the express contract or an implied contract, to effectuate unauthorized objects and purposes. As to the money borrowed from Dobbs, it was used to carry out the same unauthorized objects and purposes, and was not applied to any lawful demand against the board, and was used in discharging a debt for which the board and city were not in any way liable. In Chapman *v.* County of Douglas, 107 U. S. 348 (2 Sup. Ct. 62, 27 L. ed. 378), the owner of lands conveyed them to Douglas County for a poor-farm, and the county took possession of the lands and used them for that purpose. In pursuance of the purchase, the county made one payment on the purchase-price, and for the remainder of the purchase-money gave its notes, secured by mortgage, payable in one, two, three, and four years. The county had no authority to buy these lands on credit and to give its notes for the unpaid purchase-money secured by mortgage. Holders of these notes filed a bill praying for a reconveyance and an accounting, or, should the county elect to retain the lands, then for a decree for the value of them. The Supreme Court of the United States said: "As the agreement between the parties has failed by reason of the legal disability of the county to perform its part, according to its conditions, the right of the vendor to rescind the contract and to a restitution of its title would seem to be as clear as it would be just." The differences between that case and the ones at bar are twofold: First, these cases are not for rescission and resti-

tution, but to compel the board to pay for the properties purchased. Second, in that case the county was authorized to purchase a farm for the maintenance of the poor, though not authorized to buy it on credit. In the cases under consideration, this board was without authority to buy these properties either for cash or on credit. In *Peed* v. *McCrary,* 94 *Ga.* 487 (21 S. E. 232), it was held: "Where the money of a lender has actually been applied to the legitimate uses of a county, that is, to objects to which county revenue may rightly be devoted, it is lawful to repay the loan out of the county treasury when funds for the purpose are on hand." In that case the money borrowed was devoted to objects to which the county money could be rightly applied. In the cases at bar, the municipal funds could not lawfully be applied to the objects for which they are sought to be made liable. The same distinction can be drawn between other cases relied upon by counsel for the plaintiffs; and thus distinguished they do not conflict with the rulings now made by this court.

5. In a few days after the trustee received the notes given by the Board of Lights and Waterworks for the purchase of the properties which the trustee agreed to sell to said board, said trustee sold the same for their full value to the Trust Company of Georgia, and now has no further interest whatsoever in said promissory notes. By the sale of said notes any right of the trustee to maintain an action to recover the value of the property which he contracted to sell to said board passed to his assignee of said notes. Parkersburg *v.* Brown, 106 U. S. 487 (1 Sup. Ct. 442, 27 L. ed. 238). This being so, Niller, as trustee, failed to make out a case which entitled him to recover; and the court erred in not sustaining the exception, both of law and fact, of the defendant to the finding of the auditor that the board was indebted in the sum of $12,000 to said trustee.

6. Whenever a municipality or one of its subsidiary or auxiliary commissions undertakes to contract a debt in violation of art. 7, sec. 7, par. 1, of the constitution of this State (Civil Code (1910), § 6563), such contract is prohibited, and is void and unenforceable under said provision of the constitution. Under this stringent provision, when property is received under such contract the law does not raise an implied undertaking on the

part of such municipality or commission to pay therefor, as the enforcement of such implied undertaking would enable the city and the purchaser to evade this constitutional provision and would in effect render the same nugatory and void. *McCrary Co.* v. *Glennville,* 149 *Ga.* 431 (100 S. E. 362) ; *Dobbs* v. *Brumby,* supra.

*Judgments reversed. All the Justices concur, except Russell, C. J., who dissents from the judgment in No. 3220, and Atkinson, J., who dissents from both judgments.*

BECK, P. J. I concur in the judgment; but the language used in the last paragraph of the decision is too broad, and I do not agree to all that is said therein.

ATKINSON, J., dissenting. On December 31, 1919, William Niller as trustee instituted an equitable action against the Board of Lights and Waterworks of the City of Marietta, for an accounting, and to recover reasonable and just compensation for certain property alleged to have been delivered by the plaintiff to the latter and applied to its own uses and benefits. The 4th paragraph of the petition as amended alleged: " On January 8th, 1916, your petitioner delivered to the Board of Lights & Waterworks of the City of Marietta, a corporation duly incorporated under an act of the General Assembly of the State of Georgia, approved the —— day of ————— 1906, which act was amended by an act approved the —— day of ————— 1909, having its principal place of business in Cobb County, Georgia, and which board is now composed of the following persons, to wit: James T. Anderson, Chairman, Ralph W. Northcutt, R. A. Hill; ex-officio members, Jim R. Brumby Jr., Mayor of the City of Marietta, and T. L. Wallace, Chairman of Council Committee, certain valuable property to wit: the franchises held and enjoyed by the Kennesaw Paper Company and your petitioner as trustee of the properties of said Kennesaw Paper Company, conferring upon it the right to use the streets, alleys, and public square of the City of Marietta in the conduct of an electric-lighting and power business, which franchises were exceedingly valuable, for that they were perpetual and without condition; also the electric-light and power business of said Kennesaw Paper Company and of your petitioner as trustee therefor, operated and conducted in and around the City of Marietta, together with all of its books, contracts, rights, and good-will, including contracts then in ac-

tive existence with 322 customers to whom your petitioner was at that time furnishing light and power in and about the City of Marietta, which rights, business, good-will, and contracts were of large value, as hereinafter more particularly set out." The 5th paragraph of the petition as amended alleged: "That, contemporaneously with the delivery of said properties by your petitioner to the Board of Lights & Waterworks of the City of Marietta, he transferred to it all of his rights, title, and interest therein, and cashed its check for the sum of three thousand ($3,000.00) dollars as a payment on account; it being well understood that the balance of the true value would be subsequently paid." Paragraphs 6 to 13, inclusive, were as follows:

" 6. That prior to said delivery and transfer of the properties set forth above, the Board of Lights & Waterworks of the City of Marietta had constructed and was operating an electric-light and power plant and system in competition with that being operated by your petitioner, and at the time of such transfer and for years prior thereto there had been a keen and active competition between your petitioner's electric-light business and that being conducted by the Board of Lights & Waterworks for the City of Marietta, which competition was so keen and of such a nature that the Board of Lights & Waterworks of the City of Marietta was unable to operate the light and power plant and system constructed and being operated by it profitably, and your petitioner's business was a larger and more extensive business than that conducted by the Board of Lights & Waterworks, for that your petitioner at such time had outstanding, active, existing, going contracts with 322 customers, while the Board of Lights & Waterworks had at that time existing, outstanding, going contracts with only 258 such customers.

" 7. That immediately upon the acquirement by the Board of Lights & Waterworks of the City of Marietta of the property delivered and transferred to it by this petitioner as aforesaid, the operations of the entire electric-light and power plant and system then owned and controlled by said Board of Lights & Waterworks, including that which it acquired from petitioner, became exceedingly profitable, the earnings therefrom being more than twice the amount of earnings which the Board of Lights & Waterworks had derived from the operation of its plant system prior to the

1st day of January, 1916. That prior to the year of 1916 the Board of Lights & Waterworks of the City of Marietta did not average not [net?] profits from the system then operated by it an average of more than $4500.00 a year, while during each of the years following the 1st day of January, 1916, and including the years 1916, 1917, 1918, and 1919, the amount of profits derived from the operation of the plant and system of lights and power, including the property acquired from your petitioner by said Board of Lights & Waterworks, has averaged a net amount in excess of $10,000.00 each year.

" 8. That a substantial part of the profits not exceeding an average of $4500.00 each year, as above stated, derived by the said Board of Lights & Waterworks in the operation of its electric-light and power plant and system prior to the 1st day of January, 1916, was derived from the large amount paid to the Board of Lights & Waterworks by the City of Marietta itself for lights and power furnished to said City, being the payment of $300.00 per month during said period, while after the said Board of Lights & Waterworks acquired the property transferred and delivered to it by your petitioner as aforesaid, the cost of the lights and power furnished by said electric light plant and system by said Board was reduced from $300.00 per month to $75.00 per month, a saving of $225.00 per month to the City of Marietta and a reduction of income by the same amount to the Board of Lights & Waterworks of the City of Marietta, constituting about two thirds of the entire net profit which had been received by said Board of Lights & Waterworks from the operations of its electric-light plant and system prior to the acquirement of the properties transferred and delivered to it by the petitioner as aforesaid.

" 9. That your petitioner is informed and believes, and so charges, that out of the average net profit of $10,000.00 per annum realized by said Board of Lights & Waterworks of the City of Marietta in the operation of the electric-light plant and system, including the property acquired from your petitioner as aforesaid for the years 1916, 1917, 1918, and 1919, eight tenths ($\frac{8}{10}$ths) thereof is directly attributable to the acquirement of the properties sold to said board by your petitioner and conclusively establishes the fact that said properties have a distinct, fixed

market value which, if judged by its income-producing value, as above set forth, would approximate a value of $100,000.00.

" 10. But your petitioner shows that from whatever point of view the value of said properties transferred and delivered by your petitioner to said Board of Lights & Waterworks of the City of Marietta may be considered, that the same were reasonably and fairly worth, at their true market value, twenty thousand ($20,000.00) dollars, or some other large sum.

" 11. That immediately after transferring and delivering the aforesaid property to said Board of Lights & Waterworks, your petitioner, inasmuch as he had transferred the franchises aforesaid and the good-will and business of the electric-light plant and system being operated by him and the right to do business as a going concern, he in good faith dismantled his own plant, took down his poles and wires, and discontinued the use of the streets, alleys, and public square in said city and discontinued the operation and conduct of an electric-lighting plant and system in and around said city.

" 12. That the Board of Lights & Waterworks of the City of Marietta still retains the aforesaid property and is still deriving the benefit from the use and operation thereof and large profits therefrom, while refusing to compensate your petitioner for the value of such property, and at all times since shortly after the transfer and delivery of said property by your petitioner to said board, being unwilling and in fact unable to return said property to your petitioner or to restore the status quo between your petitioner and said board; that it would be unconscionable, unjust and inequitable to permit said board so to do without paying to your petitioner the reasonable and fair value of said property, both tangible and intangible.

" 13. That said Board of Lights & Waterworks, under the act of the Legislature creating the same and the act amendatory thereof, is a corporate body subject to sue and be sued, and liable for its due and lawful obligations wherever made; that it has no power of taxation, but that the earnings from the operation of the public utilities in its hands, over and above all expenses of operation and after furnishing lights and power at reasonable rates to the citizens of the City of Marietta, are ample to enable it to pay all of its obligations, including the payment to your pe-

titioner of a fair and just compensation for the properties transferred and delivered to it by him."

The prayers were   (1)   For a judgment for the full value of the property, less the cash payment received by plaintiff when the property was delivered.   (2)   For an accounting to ascertain a fair, reasonable, and just compensation to be paid for the property, and for judgment for such amount as might be ascertained. (3)   That for the purpose of paying the amount of the judgment the defendant be required to set aside each year, until such judgment shall have been satisfied, all the net profits derived from the operation of defendant's business.   (4, 5)   For process and general relief.

The defendant filed general and special demurrers.   The defendant also filed an answer alleging that for the want of sufficient information the defendant could neither admit nor deny the allegations in paragraphs 1, 2, and 3 of the petition, and alleging a denial of the allegations contained in paragraphs 4 to 13, inclusive, of the petition.   Subsequently the answer was amended by filing a paper relied on as a plea of res adjudicata, which set out copies of the entire record in a former suit, including the final judgment of the trial court and the decisions of this court in the case of *Brumby* v. *Board of Lights and Waterworks,* 147 *Ga.* 592, and *Dobbs* v. *Brumby,* 150 *Ga.* 599, that case having been twice brought to the Supreme Court.   The case mentioned was a suit instituted by B. G. Brumby as a citizen and taxpayer of Marietta against the Board of Lights and Waterworks of the City of Marietta, William Niller as trustee, and E. P. Dobbs.   The purpose of the suit was to enjoin the Board of Lights and Waterworks from paying certain promissory notes, and to have a decree for cancellation of the notes.   One of the notes was for $3000, payable to E. P. Dobbs, and the others (4 in number) were each for $3000, payable to William Niller, trustee.   The notes originated in a contract of sale by Niller, trustee, to the Board of Lights and Waterworks of the same property that is described in paragraph 4 of the original petition in the present case, the value of which is the subject of the present action; and the notes as well as the contract were alleged to be void, because,   (1)   the Board of Lights and Waterworks did not have corporate power to make the contract;   (2)   the agreement was an attempt by a municipal

corporation to create a new debt without complying with certain requirements of the constitution. The judgment of the trial court overruling a general demurrer to the petition was reversed, this court holding in effect that the board did not have corporate power to enter into the contract, and that the contract was illegal and the promissory notes could. be enjoined at the instance of a taxpayer. 147 *Ga.* 592 (supra). After that decision the attorney for the Board of Lights and Waterworks made a statement in open court that the board was content and did not care to further resist the suit. However, Niller, trustee, and Dobbs each filed amendments to their respective pleas, alleging circumstances under which the contract was made and the notes executed, which were substantially as set forth in the original petition in the present action; and it was alleged that the contract was made in good faith, without any intention to violate the constitution or laws, but in order to meet an actual necessity of the Board of Lights and Waterworks to enable it to carry out the object of its incorporation, and that the property was delivered to the Board of Lights and Waterworks, and was received by that Board and applied by it to its great benefit and advantage, and in the circumstances the Board of Lights and Waterworks should not be allowed to repudiate the contract without paying the value of the property received by it. The property delivered by Niller, trustee, consisted of the property which is described in paragraph 4 of the original petition, and the property delivered by Dobbs consisted of a loan of $3000 to the Board of Lights and Waterworks to be used in making the initial cash payment to Niller, trustee, and was used for that purpose. The amendments to both answers were stricken on demurrer; and a verdict was directed, finding in favor of the injunction. A decree was entered perpetually enjoining the defendants as prayed. The decree contained a provision, however, that: "This order is without prejudice to any right that the defendant may have, if any he has, for restitution from the Board of Lights & Waterworks." Dobbs and Niller, trustee, brought the case to this court, and the judgment was affirmed. 150 *Ga.* 599 (supra). It was insisted in the plea of res adjudicata that the judgments above recited were finally conclusive as against Niller, trustee, and Dobbs, in favor of the Board of Lights and Waterworks. At a term subsequent

to the term at which the res adjudicata amendment was filed, the Board of Lights and Waterworks filed a second amendment to its original answer, alleging in substance that the board was a mere ministerial agent of the city, without any property of its own, and without any authority except to operate the city's plant for the benefit of the city, and that such facts were well known to the plaintiff at the time the contract was made; also that, at the time of the sale, the property sold by Niller, trustee, was of much less value than as alleged in the plaintiff's petition; that the property was in a failing condition, and that there was no necessity upon the part of the Board of Lights and Waterworks to buy the property, and that the board did not receive any money from Dobbs.

The foregoing is a substantial statement of the pleadings in the case of Niller as trustee against the Board of Lights and Waterworks. A separate suit was instituted by E. P. Dobbs against the Board of Lights and Waterworks, to recover the value of the $3,000 which he had loaned to the board with which to make the initial payment to Niller, trustee, and which was used for that purpose. The original petition was similar, but somewhat more elaborate in its allegations as to the necessity for the Board of Lights and Waterworks to make the contract of purchase for Niller, trustee, and of the necessity for the loan of $3,000 with which to make the initial payment and the good faith of Dobbs in making the loan. As a part of the history of the transaction, a copy of the written contract between Niller, trustee, and the Board of Lights and Waterworks was attached as an exhibit to plaintiff's petition, it being expressly stated that plaintiff did not claim under it. Except as indicated, the pleadings in the case of Dobbs were similar to those hereinbefore referred to in the suit instituted by Niller, trustee. Both cases, having been referred to an auditor, were tried together. The auditor made similar reports in each case, except that in the case of Niller, trustee, he found for the plaintiff $12,000 as principal, and a stated amount for interest; and in the case of Dobbs $3,000 principal, and a stated amount for interest. The defendant in each case filed exceptions of law which were overruled, and exceptions of fact which were disallowed. The defendants excepted to these judgments.

It is not and cannot be denied that the board was engaged in operating an electric-light business in the City of Marietta, and had lawful authority to conduct such business. There was ample evidence to support the finding that the physical property, contracts with other customers, franchise of the competing company, and its good-will were all valuable assets, and that their reasonable value was at least equal to the amount found by the auditor; also that such assets above mentioned were delivered by Niller's competing company to the Board of Lights and Waterworks, and that the $3000 loaned by Dobbs to the board was used by the board in making an initial payment to Niller, well within the limits of the reasonable value of the property. The evidence also was sufficient to show that the properties mentioned, having been so received, were used by the board to its immense benefit, a benefit amounting in value far in excess of the amount found by the auditor. In these circumstances, the great question is as to the liability of the board for the reasonable value of the property. In their pleadings and evidence the plaintiffs conceded invalidity of the contract of sale and of the notes, because, in the former decisions of *Brumby* v. *Board of Lights and Waterworks,* and *Dobbs* v. *Brumby,* supra, they had been held to be void and unenforceable, on the ground that they were ultra vires and violative of the constitution. The exact position which the plaintiffs took in the present cases was, that the board, having under such invalid contracts obtained plaintiffs' property in good faith as actually necessary to enable it to carry out the work for which it was incorporated and in which it was engaged, and the property having been applied to such purpose and produced beneficial results of greater value to the board than the value of the property, and the board continuing to enjoy the benefits of the property without the ability to return the property in kind, should in equity be required to account to plaintiffs for the reasonable value of the property, notwithstanding that at the time the property was received by the board that institution did not have money with which it could pay the value of the property and could not levy any tax for such purpose during the current year or at any other time.

The foregoing statement shows a distinction which, in order to avoid confusion, should be kept in mind between these cases

and the former cases above cited. In the former cases the suits had reference to the enforceability of contracts for payment by the board at future dates of agreed sums of principal and agreed rates of interest, which were held to be void and unenforceable. The present suits are for recovery of the reasonable value of property delivered to the board under such void contracts, on the ground that the property had been received by the board and used by it to its advantage in the business which it had a lawful right to conduct. The present suits must not be confused with the idea that an attempt is made to imply a contract to do the same thing which was held in the former cases could not be done by express contract. The things are not the same. The principal and interest to be paid under the express contracts was fixed by *agreement of the parties,* which is entirely a different thing from an equitable obligation to pay the *reasonable value* of the property *to be ascertained by the court,* on the basis that the property was received by the board and used in its lawful business. The conventional amount fixed by agreement of the parties in the illegal contract might be an entirely different amount from the reasonable value of the property which the court might ascertain. With this distinction in mind authorities bearing on the case as now presented will be considered. Reference will first be had to the decision in the case of *Butts County* v. *Jackson Banking Co.,* 129 *Ga.* 801 (supra). Butts County issued certain promissory notes to the bank, payable at intervals through the year, for the purpose of providing present funds for the immediate payment of certain county warrants. The notes were discounted by the bank and the proceeds placed to the credit of the county under an agreement that the money should be actually paid by the bank to the holders of the county warrants. In pursuance of the agreement certain of the warrants were paid by the bank, and the warrants were stamped "paid." In a few instances money was paid upon the check of the treasurer, these checks actually representing the amounts of warrants turned over to the treasurer. Subsequently the county denied liability on the notes, and refused to reimburse the bank for the money paid by it to warrant holders. The bank instituted an equitable action against the county, and prayed that it have judgment on the notes; that, if the contract of loan were declared illegal, the bank be decreed

to be the owner of the warrants which it had paid; and that it be subrogated to all the rights of the several warrant-holders; and for other relief. After judgment of the trial court the case was brought to the Supreme Court by writ of error. It was held that the contract and promissory notes were void on the ground that they were violative of the constitution of this State, and could not be enforced. The petition in that case did not seek a recovery on the basis of an action for money had and received, or on the basis of an action for the value of the property delivered under an illegal contract, but proceeded on the basis (1) of the lawfulness of the contract, and, (2) if the contract should be found unlawful, that the bank be subrogated to the rights of other persons holding lawful warrants against the county. Such being the character of the action, after holding that the contract •was illegal and unenforceable, it was then held that the bank was subrogated to the rights of the holders of the warrants, and could recover from the county upon the contract evidenced by the warrants. However, in the course of the opinion there was a discussion of the principles upon which a county might be held liable for the value of property which it had received under an unlawful contract. After demonstrating that the contract was violative of the constitution, the court used this language: "Counsel for plaintiffs in error contend that the illegality of the notes pervades the whole transaction, and bars a recovery of the money, even though beneficially applied to a lawful purpose. To this contention we can not give our assent. It it very generally held that counties and municipal corporations are liable for money had and received by them and applied beneficially to their authorized objects, although the contract by which the money was obtained was unauthorized by law. Allen v. LaFayette, 89 Ala. 641; Salt Lake City v. Hollister, 118 U. S. 256; Parkersburg v. Brown, 106 U. S. 487; Dill. Mun. Cor. § 126; 20 Am. & Eng. Enc. L. (2d. ed.) 1158; Luther v. Wheeler, 73 S. C. 83. The principle of liability rests upon the theory that the obligation implied by the law to pay does not originate in the unlawful contract, but arises from considerations outside of it. In ascertaining the quantum of liability the amount of the loan is not taken into account, but the measure of recovery is the money actually applied to lawful municipal or county uses.

The obligation to account for money received by the county, and actually devoted to lawful purposes, rests upon the broad principle of common honesty, which will not permit the county to retain the benefit of money lawfully applied to its use, and at its request, simply because the county lacked the power to borrow the money."

The case of Parkersburg *v.* Brown, 106 U. S. 487, 503, cited above, involved the following transaction: The City of Parkersburg issued certain bonds payable to a named person, which were delivered to him under a contract whereby he should pay semi-annual interest on the purchase-price and the principal at intervals during a term of years. To secure such payments the payee of the bonds conveyed certain real estate and personal property to a trustee, with power of sale in case of default. The payee then indorsed the bonds in blank, and sold them to purchasers who bought them for value and in good faith. The grantor named in the deed of trust defaulted in the payment of interest. After the city had paid several installments of interest on the bonds it took into its possession the property described in the deed of trust, and refused to make other payments of interest on the bonds. The holders of the bonds brought an equitable suit against the city. It was held, first, that the bonds were void, because the act of the legislature under which they were issued was violative of the constitution of the State. It was held further that the payee named in the bonds had a right to reclaim the property and to call on the city to account for it on disaffirmance of the illegal contract, and that such right passed to his assignee. In the course of the opinion, after discussing the constitutional question, it was said: "But, notwithstanding the invalidity of the bonds and of the trust, the O'Briens had a right to reclaim the property and to call on the city to account for it. The enforcement of such right is not in affirmance of the illegal contract, but is in disaffirmance of it, and seeks to prevent the city from retaining the benefit which it has derived from the unlawful act. 2 Com. Cont. 109. There was no illegality in the mere putting of the property by the O'Briens in the hands of the city. To deny a remedy to reclaim it is to give effect to the illegal contract. The illegality of that contract does not arise from any moral turpitude. The property was transferred under a contract

which was merely malum prohibitum, and where the city was the principal offender. In such a case the party receiving may be made to refund to the person from whom it has received property for the unauthorized purpose, the value of that which it has actually received. White v. Franklin Bank, 22 Pick. (Mass.) 181; Morville v. American Tract Society, 123 Mass. 129; Davis v. Old Colony Railroad, 131 Id. 258, 275, and cases there cited. The O'Briens having indorsed and sold the bonds, the holders of the bonds succeeded to such right of the O'Briens, as an incident to the ownership of the bonds."

In Chapman v. County of Douglas, 107 U. S. 348, 355 (2 Sup. Ct. 62, 27 L. ed. 378), a case of the following character was involved: A conveyed to a county in Nebraska certain lands for a " poor-farm," and they were thereafter used as such. The county, pursuant to its agreement, made one cash payment, and for the remainder of the stipulated consideration gave its notes secured by mortgage and payable in one, two, three, and four years. Subsequently the Supreme Court of that State decided, that, by the purchase of lands for such a purpose, a county could not be bound to pay at any specified time the purchase-money, or to secure it by mortgage upon them, but was limited to a payment in cash and to the levy of an annual tax to create a fund wherewith to pay the residue. Holders of the notes filed a bill praying for a reconveyance and an accounting, or, should the county elect to retain the lands, then for a decree for the value of them. On appeal from the Circuit Court of the United States, the Supreme Court held that the plaintiff was entitled to the relief prayed for. In the course of the opinion it was said: " As the agreement between the parties has failed by reason of the legal disability of the county to perform its part, according to its conditions, the right of the vendor to rescind the contract and to a restitution of his title would seem to be as clear as it would be just, unless some valid reason to the contrary can be shown. As was said by this court in Marsh v. Fulton County, 10 Wall. 676, 684, and repeated in Louisiana v. Wood, 102 U. S. 294, ' the obligation to do justice rests upon all persons, natural and artificial; and if a county obtains the money or property of others without authority, the law, independent of any statute, will compel restitution or compensation.' See also Miltenberger v. Cooke, 18

Wall. 421." In Citizens' Central National Bank of New York
*v.* Appleton, 216 U. S. 196 (30 Sup. Ct. 364, 54 L. ed. 443),
it was held: "Although a contract made by a corporation may
be illegal as ultra vires, an implied contract may exist compelling
it to account for the benefits actually received. A national bank
which guarantees a loan made by another bank, in pursuance of
an agreement that it be paid the amount due it by the borrower
out of the proceeds of the loan, cannot avoid its liability for the
amount actually received by it pursuant to the arrangement, on
the ground simply of ultra vires; it may be liable for money had
and received." In the course of the opinion one of the cases cited
for the ruling above stated was Central Transportation Co. *v.*
Pullman's Car Co., 139 U. S. 24, 60 (11 Sup. Ct. 478, 35 L. ed.
55), from which the following excerpt was taken from the opinion
rendered by Mr. Justice Gray: "A contract ultra vires being
unlawful and void, not because it is in itself immoral, but be-
cause the corporation, by the law of its creation, is incapable of
making it, the courts, while refusing to maintain any action upon
the unlawful contract, have always striven to do justice between
the parties, so far as could be done consistently with adherence
to law, by permitting property or money, parted with on the faith
of the unlawful contract, to be recovered back, or compensation
to be made for it. In such case, however, the action is not main-
tained upon the unlawful contract, nor according to its terms,
but on an implied contract of the defendant to return, or, failing
to do that, to make compensation for, property or money which it
has no right to retain. To maintain such an action is not to
affirm, but to disaffirm the unlawful contract." Other cases cited
by the court as supporting the principle announced were: Mer-
chants' Bank *v.* State Bank, 10 Wall. 604, 644 (19 L. ed. 1008);
United States *v.* State Bank, 96 U. S. 30, 36 (24 L. ed. 647);
Louisiana *v.* Wood, 102 U. S. 294 (26 L. ed. 153); Parkersburg
*v.* Brown, 106 U. S. 487, 503 (supra); Read *v.* Plattsmouth, 107
U. S. 568 (2 Sup. Ct. 208, 27 L. ed. 414); Dittey *v.* Dominion
National Bank, 43 U. S. App. 613, 615; Atlantic Cotton Mills
*v.* Indian Orchard Mills, 147 Mass. 268 (17 N. E. 496, 9 Am.
St. R. 698); Perkins *v.* Boothby, 71 Maine, 94, 97; Bank of Lakin
*v.* National Bank, 57 Kan. 183 (45 Pac. 587).

The principle stated in the quotation from *Butts County* v.

*Jackson Banking Co.,* supra, has been applied in various forms by this court, practically from the date of its organization. In *Whitehead* v. *Peck,* 1 *Ga.* 140, referring to the action for money had and received, it was said: " It lies in all cases where money is in the hands of another, which, *ex æquo et bono,* the plaintiff is entitled to recover, and which the defendant is not entitled in *conscience* to retain." This decision was cited with approval and applied in *McCay* v. *Barber,* 37 *Ga.* 423, 424, where it was said: " This was an action of assumpsit to recover the amount of money paid by plaintiffs to defendant for certain coupons purporting to be issued by the City of Montgomery, Alabama, and which coupons were not the obligations of that corporation, though issued by the proper officers. The action for money had and received is an equitable action and extensively remedial. It lies, in all cases, where money is in the hands of one, which in equity and good conscience, should be paid to another." See also *Central Railroad* v. *First National Bank of Lynchburg,* 73 *Ga.* 383, and *Bates-Farley Savings Bank* v. *Dismukes,* 107 *Ga.* 212 (33 S. E. 175), in which pronouncements similar to the foregoing were made with reference to actions for money had and received. In *Peed* v. *McCrary,* 94 *Ga.* 487 (supra), it was held: " Although it may be true that the constitution, of its own vigor, does not confer power to borrow money by temporary loans to supply casual deficiencies of revenue, yet where the money of a lender has actually been applied to the legitimate uses of a county, that is, to objects to which county revenue may rightly be devoted, it is lawful to repay the loan out of the county treasury when funds for the purpose are on hand, with seven per cent. interest thereon." In *Ford* v. *Cartersville,* 84 *Ga.* 213 (10 S. E. 732), it was held: " Under its charter, the Mayor and Aldermen of Cartersville have a right to make an annual contract to supply the city with water and gas, provided they make provision for the payment of the same. If a contract for a longer space of time is illegal, yet where the water and gas companies have complied with their part of the same, by erecting their plants at great expense in order to furnish the city with gas and water, and the city has received the benefits thereof for a year, it should pay for the gas and water consumed and used during that time." To the same effect is the ruling in *City Council of Dawson* v.

*Dawson Waterworks Co.,* 106 *Ga.* 696 (8) (32 S. E. 907). The principle was applied in *Bailey* v. *Miller County,* 24 *Ga. App.* 746 (102 S. E. 178), where it was held: (1) " It is within the legitimate powers of a county to rent a farm for the purposes of maintaining and working paupers chargeable against the county, and to furnish live stock and food products necessary to maintain such farm and carry out such purposes. Civil Code (1910), § 542." (2) " Where a county, in the exercise of such powers and for such purposes, and acting through the proper authorities, obtains possession of land, with crops growing thereon belonging to another, under a contract of purchase which is void for the reason that it is an attempt to create a debt beyond the constitutional power of the county, the county is nevertheless liable to the owner of the land for its rental value for the time during which the land was actually occupied and used by the county, and for the value of the crops thereon consumed for the maintenance of such farm and the live stock of the county necessary for the purposes above mentioned or other legitimate county purposes."

The plaintiff in error contends that the decisions in *Brumby* v. *Board of Lights and Waterworks,* and *Dobbs* v. *Brumby,* supra, and in *McCrary Company* v. *Glennville,* 149 *Ga.* 431 (supra), render it impossible for the plaintiffs to recover. But, bearing in mind the distinction pointed out at the beginning of this division of the opinion, it is manifest that the cases cited did not rule adversely to anything that is stated above. The first two decisions just cited had reference to the same case tried at different times in the court below. The whole question made by the pleadings and evidence was whether the contracts were illegal and should be enjoined. This court held that they were illegal, as beyond the charter power of the board to make such contracts, and as violative of the clause of the constitution limiting the power of a municipality to create new debts; and that the contracts should be enjoined. In the *McCrary* case the rulings were as follows: " Where a contractor enters into a contract with a municipal corporation for the construction and equipment of a light and water plant under a written agreement whereby some of the contract price is to be paid in instalments through a series of years after the contract is completed, the effect of such contract is to create a debt within the meaning of article 7, section 7, para-

graph 1, of the constitution of this State (Civil Code, § 6563), which limits the power of municipalities to contract debts, and is prohibited by that provision of the constitution. . . Where the contract also provides for retention of title in the contractor until the contract price is fully paid, for delivery of the plant after its completion to the municipality as lessee, and for a rental of one dollar per annum until all the deferred payments for the contract price have been made, which when done shall cause title to the property to vest immediately in the municipality, the contract is one of conditional sale as distinguished from a mere lease. . . Under former decisions of this court, where a contractor constructed and installed a light and water plant in pursuance of an executory conditional contract of sale as described in the preceding notes, and delivered physical possession to the municipality, his right of action to recover the property or to enforce the payment of the contract price by the city was necessarily dependent upon the agreement by which title was reserved in him; and that agreement, being contrary to the express provisions of the constitution, was illegal and not enforceable in law or equity. . . Applying the principles above announced, there was no error in dismissing the petition on general demurrer." It is readily seen that the petition was construed as suing upon the contract, upon the validity of which all of the relief prayed depended; and as the contract was unlawful, the plaintiff did not allege a cause of action. That decision can not be relied on as denying the principles hereinbefore discussed.

RUSSELL, C. J., dissenting. I agree to the result in *Niller's* case, for the reason, as stated in the opinion of HINES, J., that this trustee has no further interest in the matter, having received all of his money from the Trust Company of Georgia, to whom to sold the notes.

As to the case of *Dobbs,* I stand firmly by the doctrine that where any person has in his hands money or property to which ex equo et bono he is not entitled, an action will lie; and for this reason I dissent in the case of Dobbs.