A92A1004. CIRCLE H DEVELOPMENT, INC. et al. v. CITY OF WOODSTOCK.
(425 SE2d 891)

COOPER, Judge.

In the 1980s appellants developed an industrial park in the City of Woodstock (hereinafter "the City"), dividing the park into parcels and selling them. Appellants as developers provided the necessary infrastructure for the park, including an eight-inch water pipe. In late 1985, when only a few parcels had been sold, appellants' largest purchaser informed appellants and the City that water flow to the park was not sufficient for its needs. City engineers came up with a pro-

posed solution involving the installation of a 12-inch water pipe. The City could do the actual work but would not finance the upgrade. The purchaser refused to pay for the project, as did appellants. Thus, it was proposed that a community improvement district ("CID") be created.

A CID is a device that allows local governments to place the cost of infrastructure improvements on businesses that benefit from those improvements. It is created by the General Assembly through local legislation, conditioned on the consent of the local government as well as a majority of landowners within the CID. The local legislation generally designates the local government as the administrative body for the CID. In its capacity as the administrative body of the CID, the local government is able to incur debt without a voter referendum — something it could not do as a local government per se — because the debt is an obligation not of the local government but of the CID alone, supported by the CID's power to levy taxes on nonresidential real property within the district. See generally Ga. Const. 1983, Art. IX, Sec. VII; see also Monacell, "Community Improvement Districts As a Tool for Infrastructure Financing," 27 Ga. St. B. J. 203 (1991).

The plan in this case was to finance the water pipe upgrade by setting up a CID encompassing the park and then taxing landowners within the district. Because it would take some time to realize the monies from this plan and funds were needed to pay for the water pipe immediately, appellants borrowed the needed funds from the bank, with the understanding that the loan would be paid back over a five-year period out of proceeds of CID taxes. This arrangement was formalized in a three-way agreement between appellants, the City as administrative body of the CID and a bank, dated January 30, 1987 (hereinafter referred to as the "Agreement"). Appellants and the bank received an opinion letter from a city attorney stating that the CID had been properly created and that the Agreement would be binding. The CID had not been properly created, however. Although both the City Council and the necessary landowners consented to creation of the CID, the General Assembly never passed local legislation creating it. None of the parties or their attorneys checked to verify that local legislation had been passed; so the Agreement was signed, the loan was made and the project was completed with all parties believing the CID was in place. When the first payment became due in the winter of 1987-1988, the city manager realized no taxes had been collected from the CID. Assuming he simply needed to find out the proper means to assess the taxes and send out the bills, he paid the bill out of the general water fund, with the expectation that the general fund would be reimbursed when the CID taxes started coming in. He then contacted a city attorney to find out how to implement the CID tax plan and discovered that no CID had been created. When the

second payment became due, the City determined it had neither the obligation nor the authority to pay it. The bank sued appellants on the note and personal guaranty which appellants had executed to obtain funds for the water-pipe project, and appellants brought this third-party action against the City for recovery of the loan amount. From the trial court's grant of summary judgment for the City, appellants appeal.

1. In their original third-party complaint, appellants argued that the City was liable for appellant's indebtedness to the bank based on the Agreement. The City signed the Agreement in its capacity as the administrative body of the CID, however, and could not have signed it as the City; an agreement by the City as City to incur debt without voter referendum would have been ultra vires and thus null and void. See Ga. Const. 1983, Art. IX, Sec. V, Par. I (a). Because the CID was never created and the City was never designated as its administrative body, the City could not have been a party to and thus cannot be liable for breach of the Agreement.

2. Although the argument discussed in Division 1 was the only one presented by appellants' original complaint, at the hearing on the City's motion for summary judgment appellants informed the court and the City that they intended to amend their complaint to include additional claims for breach of an alleged pre-1987 promise by the City to create a CID, unjust enrichment and fraudulent misrepresentation. Because appellants had not amended their complaint to include these claims when the City filed its motion for summary judgment and the City did not later amend its motion for summary judgment to explicitly include the added claims, appellants argue that the trial court's order granting summary judgment did not address those claims and only disposed of the claim contained in the original third-party complaint. Where pleadings are amended after a summary judgment motion has been heard but before it has been decided, however, the trial court should consider the amendment in ruling on the motion. *Rushing v. Ellis*, 124 Ga. App. 621 (1) (184 SE2d 667) (1971). Where "there is nothing in the record to indicate that the trial court failed to consider [appellants'] amendment before ruling on appellees' motion for summary judgment," we assume the amendment was properly considered. *Dutton v. Dykes*, 159 Ga. App. 48, 49 (1) (283 SE2d 28) (1981). Here, appellants' argument at the hearing on the motion for summary judgment focused almost entirely on the claims contained in the amended pleadings, and the parties had the opportunity to brief the issues presented by the amendment. Moreover, the trial court's order granting summary judgment refers to pre-1987 correspondence between the parties and to appellants' lack of diligence — matters that are relevant only to the amended claims. We therefore conclude that the trial court's order granted summary judg-

ment on all of appellants' claims and all those claims are properly before us.

3. Appellants contend that if the City is not liable for breach of the Agreement because of the nonexistence of the CID, it is liable for breach of an earlier agreement to create a CID based on: (1) a December 1985 letter from appellants to the mayor in which appellants agree to loan funds for the pipe, "contingent upon the Community Improvement District being created"; (2) a January 1986 resolution in which the mayor and city council "consent to the creation of a Community Improvement District"; (3) an April 1986 letter from the city manager to appellants requesting a letter of landowner consent that "we need from you to create the Community Improvement District"; and (4) an October 1986 letter from the new city manager to appellants stating that "the City of Woodstock has set up a Community Improvement District." Appellants' contention that these documents add up to a contractual agreement to create a CID fails for several reasons. First, " '[a] complete and binding contract may be made by means of an epistolary correspondence, but this result is not accomplished until there has been a definite offer by one of the parties to the correspondence, and an unequivocal acceptance of it by the other without condition or variance. . . .' [Cit.]" *Gray v. Aiken*, 205 Ga. 649, 653 (2) (54 SE2d 587) (1949). The references to the creation and existence of the CID in the cited correspondence did not contain such an offer and acceptance and thus did not create a binding contract. Second, the City's charter provides that a contract will not bind the City unless it is reduced to writing and approved by the city council. No binding contract could have been created by means of the mayor's and city manager's correspondence, and we cannot conclude that a resolution of the council consenting to the creation of a CID somehow constitutes or ratifies a purported agreement to create a CID or otherwise replaces the required written contract approved by the council. Lastly, and perhaps most importantly, an agreement by the City to create a CID would — like an agreement to incur debt without a voter referendum — be ultra vires because under our Constitution, only the General Assembly may create a CID unless it delegates that power to a local government, which it did not do in this case. See Ga. Const. 1983, Art. IX, Sec. VII, Par. I. Thus, the City cannot be liable for breach of a purported pre-1987 agreement to create a CID.

4. Appellants alternatively argue that the City is liable because a contract should be implied in law lest the City be unjustly enriched. "Whenever a municipality . . . undertakes to contract a debt in violation of [the constitutional provision limiting local governments' power to incur debt] such contract is prohibited, and is void and unenforceable under said provision of the constitution. Under this stringent provision, *when property is received under such contract the*

*law does not raise an implied undertaking on the part of such municipality . . . to pay therefor, as the enforcement of such implied undertaking would enable the city and the purchaser to evade this constitutional provision and would in effect render the same nugatory and void. [Cits.]"* (Emphasis supplied.) *Board of Lights &c. v. Niller,* 155 Ga. 296, 303-304 (6) (116 SE 835) (1923); see also *Decatur County v. Roberts,* 159 Ga. 528 (2) (126 SE 460) (1925) (implied contract will not arise where express contract by local government unauthorized by law). The holding of *Butts County v. Jackson Banking Co.,* 129 Ga. 801 (60 SE 149) (1908), cited by appellants for the proposition that an action in quasi-contract may be maintained by one who has loaned money to a local government, is limited to situations where monies are loaned pursuant to an unauthorized agreement but used to discharged legally incurred liabilities for current expenses. See *Roberts,* supra. Appellants' reliance on *Gainesville v. Edwards,* 112 Ga. App. 672 (145 SE2d 715) (1965), is also misplaced; for in that case, in which we allowed a quasi-contract recovery for services rendered a city in the absence of a binding contract, the alleged agreement was one the city was authorized to make but simply had not made with the requisite formalities. In the instant case, the City purportedly made agreements it was unauthorized to make, and the monies loaned pursuant to the purported agreements were not used to discharge legally incurred liabilities for current expenses. Accordingly, a quasi-contract recovery for appellants is not available.

5. Appellants also claim the City engaged in fraudulent misrepresentation, pointing to an October 1986 letter from the city manager stating that the City had set up a CID and a December 1986 letter from the city attorney stating that in his opinion the City had properly created a CID. A misrepresentation is only actionable if it is made wilfully and with the intent to deceive. OCGA § 51-6-2. In this case it is undisputed that neither the city attorney, city manager nor anyone else knew the CID had not been created until 1988, well after the relevant misrepresentations were made, and there is no evidence in the record of any intent on the part of the City to deceive appellants. Moreover, that the General Assembly had not passed local legislation creating the CID was an open, public fact available to appellants if they had exercised ordinary diligence. See *Hubert v. Beale Roofing,* 158 Ga. App. 145 (279 SE2d 336) (1981). We therefore conclude summary judgment was properly granted on this claim also.

*Judgment affirmed. Sognier, C. J., and McMurray, P. J., concur.*

DECIDED NOVEMBER 4, 1992 —
RECONSIDERATION DENIED NOVEMBER 25, 1992 

*Barnes, Browning, Tanksley & Casurella, Benny C. Priest,* for

appellants.

*Drew, Eckl & Farnham, B. Holland Pritchard, Landrum & Landrum, Phillip M. Landrum, Jr., Susan Landrum, Moore & Rogers, Robert D. Ingram*, for appellee.